PENNFIELD OIL COMPANY, A NEBRASKA CORPORATION, APPELLANT AND CROSS-APPELLEE, V. W.L. WINSTROM, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF R.W. WINSTROM, APPELLEE AND CROSS-APPELLANT, AND ANDREW L. WINSTROM, APPELLEE.

673 N.W.2d 558

Filed January 23, 2004.   No. S-02-1284.

William R. Johnson, of Lamson, Dugan & Murray, L.L.P., and Raymond E. Walden for appellant.

Bruce D. Vosburg, Gerald L. Friedrichsen, and Susan E. Hager, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., L.L.O., and Russell S. Daub also filing briefs and arguing on behalf of Pennfield Oil Company.

Brien M. Welch and Daniel J. Epstein, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee W.L.Winstrom.

David A. Domina and James F. Cann, of Domina Law P.C., for appellee Andrew L. Winstrom.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

STEPHAN, J.

This is an appeal from an interlocutory order of the district court for Douglas County denying a motion filed by the law firm of Lamson, Dugan & Murray, L.L.P. (Lamson firm), which sought leave to appear on behalf of Pennfield Oil Company, and disqualification of the law firm of Fitzgerald, Schorr, Barmettler & Brennan, P.C., L.L.O. (Fitzgerald firm), which has served as counsel for Pennfield Oil since the inception of this action.

## BACKGROUND

The pleadings and exhibits received in evidence at various hearings conducted by the district court reflect the following facts: Pennfield Oil is a closely held Nebraska corporation controlled by members of the Winstrom family, with its principal place of business in Omaha, Nebraska. W.L. Winstrom (W.L.) is currently the chief executive officer of Pennfield Oil and chairman of its three-member board of directors. W.L.'s wife, Sydney Winstrom (Sydney), is also a director, and Andrew L. Winstrom (Andrew), their son, is president and the third director.

The "Articles of Agreement of the Pennfield Oil Company Stockholders," executed in 1948 and 1960, provided, inter alia,

that upon the death of any stockholder, Pennfield Oil would buy his or her stock at book value within 30 days of the date of the stockholder's death. R.W. Winstrom (R.W.), W.L.'s father and Andrew's grandfather, died on November 8, 1987. At the time of his death, R.W. owned 24.73 of the 50 outstanding shares of common capital stock of Pennfield Oil. W.L. owned the remaining 25.27 shares. W.L. was appointed as personal representative of R.W.'s estate, which was filed in Douglas County Court.

On December 14, 1987, shortly after R.W.'s death, Pennfield Oil's board of directors resolved that "the repurchase agreement relating to R.W. Winstrom's stock be enacted due to his untimely death" and that to "[e]nsure the smooth continuation of operations so as not to cause undue financial hardship[,] arrangements will be made to pay for this stock over an extended time period." An agreement entitled "Restated Stock Repurchase Agreement" was subsequently entered into between Pennfield Oil and all of its shareholders to "confirm restate, formalize and clarify the existing Pennfield stock repurchase agreement." The restated stock agreement was signed by W.L., both individually and in his role as personal representative for R.W.'s estate, as well as by Andrew. In January 1990, 16.24 shares of the stock which had been held by R.W. at the time of his death were redeemed by Pennfield Oil. Andrew purchased 15.89 shares of this stock. On December 31, 1992, W.L. and Sydney made a gift of 8.43 shares of Pennfield Oil stock to Andrew. At that point, there were 49.65 shares of Pennfield Oil stock outstanding, with Andrew holding 24.32 shares (48.983 percent) and W.L. holding 16.84 shares (33.917 percent). The remaining 8.49 shares, representing 17.1 percent of the shares outstanding, are the subject of this litigation. Those shares were initially retained by the estate to allow payment of estate taxes over an extended period of time pursuant to the Internal Revenue Code, see I.R.C. § 6166 (2000), and to reduce the burden on Pennfield Oil of redeeming all of R.W.'s stock at once. The last installment on the estate taxes was paid in August 2000, and W.L. filed an informal closing of the estate on August 8.

On February 7, 2001, Pennfield Oil filed this action against W.L., individually and in his capacity as personal representative of the estate of R.W. In its petition, Pennfield Oil alleged that it had given W.L. a notice of redemption with respect to the 8.49

shares on January 23, 2001, but that W.L. had refused to surrender the stock for redemption and had notified Pennfield Oil that he intended to transfer the stock to himself in his individual capacity. Pennfield Oil sought declaratory relief with respect to its claim that W.L. was obligated to surrender the 8.49 shares of Pennfield Oil stock for redemption. Based upon allegations of breach of contract and breach of fiduciary duty on the part of W.L., Pennfield Oil also sought orders temporarily and permanently enjoining W.L. from voting the disputed stock, from taking any action to waive rights or obligations with respect to its redemption, or from issuing additional shares of Pennfield Oil stock. Pennfield Oil subsequently filed an amended petition in which Andrew was added as a party defendant, based upon an allegation that as a stockholder, director, and president of Pennfield Oil, he "may be a necessary and indispensable party." The petition and amended petition were filed by the Fitzgerald firm as counsel for Pennfield Oil.

W.L. filed an answer denying any obligation to surrender the stock for redemption and alleging that it was his intention and that of Pennfield Oil to waive its right of redemption as to the 8.49 shares. W.L. further alleged that

> to continue to allow the defendant Andrew L. Winstrom to prevent a legitimate meeting of the directors of Pennfield to meet and consider the corporation's waiver of its right of redemption to the R.W. Winstrom Estate shares of stock would be unjust and inequitable, contrary to the rights of the directors to act on behalf of the corporation and adverse to the interests of the corporation.

In its reply, Pennfield Oil alleged that by virtue of the actions it had taken to exercise its right of redemption, "W.L. Winstrom is no longer the majority shareholder of plaintiff Pennfield Oil Company."

On February 15, 2001, the district court issued a temporary injunction reflecting that "[a]ll parties are in further agreement to the entry of a Temporary Injunction as set forth herein." This order temporarily enjoined W.L., both personally and as personal representative of the estate of R.W., Andrew, and Pennfield Oil from taking any action to (1) transfer the 8.49 shares to any party other than Pennfield Oil, (2) vote the 8.49 shares, (3) waive any

rights or obligations of redemption with respect to the 8.49 shares, or (4) issue additional shares of Pennfield Oil stock or in any way change the status quo of Pennfield Oil, "including, but not limited to, changing the present number or membership of the Board of Directors or officers of the corporation or amending any By-Laws or Article affecting the issues involved herein."

On September 27, 2002, W.L. filed a motion with the district court asking the court to allow a meeting of Pennfield Oil's board of directors and attaching a proposed agenda. W.L.'s proposed agenda asked the court's approval to address the following:

1. Which action is an authorized action brought in the name of and on behalf of Pennfield Oil Company in the District Court of Douglas County, Nebraska.

2. Whether Pennfield Oil Company should indemnify, hold harmless, and pay attorneys' fees and costs for the defense of Andrew L. Winstrom to the action *Pennfield Oil Company v. Andrew L. Winstrom*, Doc. 1017, No. 149.

3. Ratify and approve corporate capital expenditures.

4. Hire auditors to perform financial audits for 2002.

5. Accept financial statements which have been prepared but not yet completed by the auditors for 2001.

6. Declare dividends and distributions or determine that Pennfield Oil Company needs to retain equity in the best interests of Pennfield Oil Company concerning 2002 earnings.

7. Negotiate and continue existing line of credit with its bank.

8. Appointment of legal counsel to represent Pennfield Oil Company in various matters, including current actions filed in the District Court of Douglas County, Nebraska.

9. Determine compensation for officers of the corporation.

10. Determination of officer job duties and the granting of authority to speak on behalf of Pennfield Oil Company with outside third parties.

11. Determine whether Andrew L. Winstrom had authority to enter into contracts with third parties. Also review and approve, if necessary, contracts which have already been entered into by Andrew L. Winstrom representing that the corporation's Board of Directors approved these contracts.

After a hearing, the district court entered an order on October 15, 2002, granting permission for Pennfield Oil's board of directors to meet and consider those matters listed in the "Proposed amended Agenda Ex. 155." On the proposed amended agenda referred to in this order, items Nos. 1, 2, and 8 on the original proposed agenda were lined out, and the following items were added: "12. Report on Sales," "13. Report on Procurement," and "14. Report on Government Relations." In its order approving a board of directors meeting, the district court expressly admonished all parties not to "vote, discuss or consider" the 8.49 shares and reminded the parties that the temporary injunction was still in effect.

The board, consisting of W.L., Sydney, and Andrew, met on October 16, 2002, and passed five resolutions. Resolution No. 4 describes the duties of each of the officers and provides in relevant part that W.L., as chief executive officer, "has complete control, authority and management responsibilities concerning all matters of litigation, legal, taxation and regulatory matters as they relate to and concern Pennfield Oil Company." Resolution No. 5 elaborated more fully on W.L.'s authority, stating:

> **RESOLVED**, that the Board of Directors further determines, that the full and exclusive authority to speak on behalf of Pennfield Oil Company on all matters concerning litigation, past, present or future, or communication with outside parties as it relates to litigation, is solely vested in W.L. Winstrom as the Chief Executive Officer, Chairman of the Board of Pennfield Oil Company. It is the Board of Directors' intent and its specific instruction to W.L. Winstrom that he has the sole authority from the Board of Directors to bind Pennfield Oil Company in all matters involving litigation, past, present or future, on behalf of Pennfield Oil Company.

Andrew abstained from voting on these resolutions, and they were passed 2 to 0.

On October 18, 2002, W.L. sent a letter to the Lamson firm requesting that it represent Pennfield Oil in this action and attaching a copy of resolution No. 5 as proof of his authority to do so. On October 23, the Lamson firm filed a motion for leave to appear as counsel on behalf of Pennfield Oil and a motion to disqualify the Fitzgerald firm.

At the October 25, 2002, hearing on the motions, the district court stated from the bench:

> From my reading of the attachments to [the Lamson firm's] motion, certainly things were undertaken by the board of directors — things that I would never have expected them to undertake and things that were far beyond the order that was entered here previously. So I'm not going to have this hearing go on any longer.

The court denied the two motions filed by the Lamson firm purportedly on behalf of Pennfield Oil. During that same proceeding, the attorney representing W.L. informed the district court that he had filed with this court an original action for a writ of prohibition and a writ of mandamus contesting the district court's jurisdiction to hear the case. On October 29, the Lamson firm, on behalf of Pennfield Oil, filed an original action for a writ of mandamus with this court seeking review of the district court's October 25 denial of leave to appear as Pennfield Oil's counsel. Without comment, this court declined to accept jurisdiction over these original actions on October 30 and November 1, 2002, respectively.

On November 4, 2002, the day on which trial was to commence, the Lamson firm filed in the district court a notice of appeal which provided:

> COMES NOW the Plaintiff, PennField [sic] Oil Company, by and through its attorney, and gives notice to the Court of its intent to appeal to the Nebraska Supreme Court or the Court of Appeals this Court's Order of October 25, 2002, which denied the Plaintiff's Motions to be represented by counsel of its choosing, and denying the disqualification of plaintiff's current attorney.

We moved the appeal to our docket on our own motion pursuant to our authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995). During the pendency of the appeal, we denied motions for summary disposition, deferring a determination of appellate jurisdiction until final disposition. We ordered supplemental briefing on jurisdictional issues and granted a motion to advance the case for oral argument.

## ASSIGNMENTS OF ERROR

On behalf of Pennfield Oil, the Lamson firm assigns, restated, that the trial court erred in (1) overruling its motion for leave to allow the Lamson firm to appear as counsel for Pennfield Oil and (2) overruling its motion to disqualify the Fitzgerald firm from continuing to appear as Pennfield Oil's counsel.

On cross-appeal, W.L. argues that the Douglas County district court lacks jurisdiction to hear the underlying suit and that therefore this court lacks jurisdiction to hear this appeal.

## STANDARD OF REVIEW

A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision. *Trainum v. Sutherland Assocs.*, 263 Neb. 778, 642 N.W.2d 816 (2002); *In re Interest of Jaden H.*, 263 Neb. 129, 638 N.W.2d 867 (2002).

## ANALYSIS

Before reaching the legal issues presented for review, it is the duty of an appellate court to settle jurisdictional issues presented by a case. *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003); *Ryan v. Ryan*, 257 Neb. 682, 600 N.W.2d 739 (1999). We are presented with two distinct jurisdictional arguments in this case. First, Andrew and the Fitzgerald firm, on behalf of Pennfield Oil, argue that this court lacks jurisdiction because the district court never entered a final, appealable order. Second, the Lamson firm, on behalf of W.L., contends on cross-appeal that this court lacks jurisdiction based on the principle that when a lower court lacks the authority to exercise its subject matter jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court. See *Cummins Mgmt. v. Gilroy*, 266 Neb. 635, 667 N.W.2d 538 (2003).

The first step in determining the existence of appellate jurisdiction is to ascertain whether the October 25, 2002, order of the district court is appealable. Generally, for an appellate court to acquire jurisdiction of an appeal, there must be a final order

entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders. See, *Mumin v. Dees*, 266 Neb. 201, 663 N.W.2d 125 (2003); *Bailey v. Lund-Ross Constructors Co.*, 265 Neb. 539, 657 N.W.2d 916 (2003). The three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered. See, Neb. Rev. Stat. § 25-1902 (Reissue 1995); *Larsen v. D B Feedyards*, 264 Neb. 483, 648 N.W.2d 306 (2002).

The Lamson firm does not contend that the October 25, 2002, order of the district court is "final," but, rather, argues that it is an appealable interlocutory order under the exception to the final order requirement recognized in *Richardson v. Griffiths*, 251 Neb. 825, 560 N.W.2d 430 (1997). In that case, the district court entered a pretrial order granting the plaintiff's motion to disqualify the defendant's attorneys on the ground that the plaintiff had consulted members of the firm representing the defendant about the case before employing another firm to represent her. On the defendant's appeal from the disqualification order, we noted our prior holding in *CenTra, Inc. v. Chandler Ins. Co.*, 248 Neb. 844, 540 N.W.2d 318 (1995). *CenTra, Inc.* held that when an order *denying* disqualification of counsel involves issues collateral to the basic controversy, and when an appeal from a judgment dispositive of the entire case would not be likely to protect the client's interests, the party should seek mandamus or other interlocutory review. We reasoned in *Richardson*, however, that because mandamus is not a preventive remedy but essentially a coercive writ, the defendant could not bring an original action for a peremptory writ of mandamus to compel the district court to vacate its order of disqualification. Noting the unfairness of depriving the defendant in this circumstance of interlocutory review of the disqualification order, *Richardson* adopted an exception to the final order requirement which was premised upon a determination that (1) the disqualification order "involve[d] issues collateral to the underlying action" and (2) "[d]elaying the appeal until a dispositive judgment on the

underlying controversy has been rendered would not likely protect the [defendants'] interests in the counsel of their own choosing and in the time and expense associated with hiring new counsel." *Richardson v. Griffiths*, 251 Neb. at 831, 560 N.W.2d at 435.

*Richardson* was subsequently distinguished by our decision in *Trainum v. Sutherland Assocs.*, 263 Neb. 778, 642 N.W.2d 816 (2002). In that case, a defendant moved to disqualify two law firms representing the plaintiff on the ground that a lawyer in one of the firms had previously provided legal services to the defendant with respect to the lawsuit. The district court denied the motion as to one of the firms, and the defendant appealed. In addressing the jurisdictional issue of whether the order denying the motion to disqualify was appealable, we noted that the exception in *Richardson* had been "necessary" because mandamus was not available to compel the court to vacate its order granting disqualification, and that "to allow the district court's disqualification order to stand, without allowing an immediate avenue for appellate review, would have prejudiced the rights of the party whose counsel had been disqualified." *Trainum v. Sutherland Assocs.*, 263 Neb. at 783, 642 N.W.2d at 820. In *Trainum*, we declined to extend the *Richardson* exception to the final order requirement to orders *denying* disqualification based in part on our prior cases holding original actions for mandamus, and not interlocutory appeals, to be the appropriate method of review for denials of motions to disqualify counsel. See, *CenTra, Inc. v. Chandler Ins. Co., supra*; *State ex rel. Freezer Servs., Inc. v. Mullen*, 235 Neb. 981, 458 N.W.2d 245 (1990). We reasoned that in the case of an order denying a motion to disqualify, "a mandamus action brought as an original action in the Supreme Court would offer the parties a more expedient method of review and would prevent use of a meritless motion to disqualify to bring the proceedings to a halt." *Trainum v. Sutherland Assocs.*, 263 Neb. at 784, 642 N.W.2d at 820.

In its jurisdictional statement, the Lamson firm contends that the interlocutory order of the district court is appealable under the exception in *Richardson v. Griffiths*, 251 Neb. 825, 560 N.W.2d 430 (1997), because denying its request for leave to appear as counsel for Pennfield Oil had "the same effect as an

order granting a motion for disqualification of counsel who already has appeared on behalf of a party." Implicit in this argument is that our refusal to accept original jurisdiction of the previous mandamus action directed to the same order means that *Richardson*, and not *Trainum*, controls on the issue of appellate jurisdiction. However, we conclude that this case is distinguishable from both *Richardson* and *Trainum* in that the issue of legal representation does not rest upon issues collateral to the underlying action.

Both *Richardson v. Griffiths, supra,* and *Trainum v. Sutherland Assocs., supra,* dealt with the issue of whether an attorney should be disqualified under ethical rules which prohibit an attorney from representing a party whose interests are directly adverse to those of a former client and where the subject matter involved is the same as that for which the attorney represented the former client. See Canons 4, 5, and 9 of the Code of Professional Responsibility. In *State ex rel. Freezer Servs., Inc. v. Mullen*, 235 Neb. at 993, 458 N.W.2d at 253, this court held that under ethical rules then in effect,

> when an attorney who was intimately involved with the particular litigation, and who has obtained confidential information pertinent to that litigation, terminates the relationship and becomes associated with a firm which is representing an adverse party in the same litigation, there arises an irrebuttable presumption of shared confidences, and the entire firm must be disqualified from further representation.

Under this rule, where facts existed which triggered the irrebuttable presumption, the court had a "clear and absolute" duty to grant a motion to disqualify the attorney in question. *Id.* at 996, 458 N.W.2d at 254.

*Richardson v. Griffiths, supra,* was an action to rescind a purchase agreement for a house. *Trainum v. Sutherland Assocs.*, 263 Neb. 778, 642 N.W.2d 816 (2002), involved claims based upon alleged limited liability company improprieties and violations of securities laws. In each case, the issue "collateral to the underlying action" was whether a lawyer for a party should be disqualified on the basis of prior representation of an adverse party. In this case, however, there is no claim that the Fitzgerald

firm should be disqualified and replaced by the Lamson firm on ethical grounds. Rather, the issue is whether substitution of counsel should be ordered based upon the resolutions passed by the board of directors of Pennfield Oil on October 16, 2002, as set forth above. That issue turns on whether the resolutions were lawfully adopted, which is related to the central issue in this case: Which of the two stockholders has a controlling interest in Pennfield Oil? If the disputed 8.49 shares are redeemed by Pennfield Oil, Andrew will hold more than 50 percent of the outstanding stock. If the shares are not redeemed by Pennfield Oil and are held by W.L. in his name, W.L. will possess a controlling interest in Pennfield Oil. Thus, the issue of who has authority to select counsel to represent Pennfield Oil with respect to its claimed right of redemption is not collateral to the merits of the action; it is directly related to the disputed central issues of corporate ownership and control.

As noted, the district court had entered a temporary injunction which prohibited all parties from taking certain actions with respect to the disputed 8.49 shares of stock, thereby preserving the status quo pending further order of the court. A temporary injunction is not a final, appealable order. *Guaranty Fund Commission v. Teichmeier*, 119 Neb. 387, 229 N.W.2d 121 (1930); *Einspahr v. Smith*, 46 Neb. 138, 64 N.W. 698 (1895). The district court also entered a subsequent order permitting Pennfield Oil's board of directors to act on specified matters, subject to an admonition that the temporary injunction remained in effect as to all other matters. It is clear from the record that the district court denied the motions of the Lamson firm seeking to be substituted for the Fitzgerald firm as counsel for Pennfield Oil at least in part because the court considered the resolutions passed by the board of directors authorizing such action to be in violation of its temporary injunction and subsequent order regarding the board of directors meeting. To determine whether this decision was erroneous, as the Lamson firm contends, we would necessarily be required to consider issues which are not merely collateral but directly related to the merits of the action and the nonappealable temporary injunction. For this reason, the order denying the motions filed by the Lamson firm, regardless of how it is characterized, does not fall within the exception in

*Richardson v. Griffiths,* 251 Neb. 825, 560 N.W.2d 430 (1997), to the final order requirement, nor is it reviewable in a mandamus action under *Trainum v. Sutherland Assocs., supra.* It is simply an interlocutory order which is not ripe for appellate review until a final order has been entered.

■ Because there has been no appealable order entered by the district court, this court does not have appellate jurisdiction and must dismiss the appeal. We therefore cannot reach the issue raised by the cross-appeal as to whether the district court has subject matter jurisdiction. Although the record reflects that the district court has resolved that issue in the affirmative by denying a motion for summary judgment filed on behalf of W.L., denial of a motion for summary judgment is not a final order and is not therefore appealable. *Cerny v. Longley,* 266 Neb. 26, 661 N.W.2d 696 (2003); *Moyer v. Nebraska City Airport Auth.,* 265 Neb. 201, 655 N.W.2d 855 (2003). Having concluded that we have no jurisdiction over the appeal and are therefore unable to reach its merits, we likewise conclude that we lack any independent jurisdictional basis to resolve the issues raised by the cross-appeal. We therefore express no opinion and make no determination with respect to the issue of whether the district court has subject matter jurisdiction.

### CONCLUSION

For the foregoing reasons, we conclude that because no appealable order has been entered by the district court, we lack appellate jurisdiction over the appeal and cross-appeal, and we therefore dismiss.

APPEAL DISMISSED.

McCORMACK, J., not participating.