Because we find that the noncompete covenant is invalid and unenforceable, we affirm the dismissal of Jani-King's breach of contract and tortious interference claims.

## VI. CONCLUSION

We affirm the district court's decision.

Affirmed.

─────────────

Shasta Linen Supply, Inc., appellee, v.
Applied Underwriters, Inc., and Applied
Underwriters Captive Risk Assurance
Company, Inc., appellants.

___ N.W.2d ___

Filed April 10, 2015.    No. S-14-270.

1. **Judgments: Jurisdiction.** A jurisdictional question that does not involve a factual dispute presents a question of law.
2. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction.
3. **Jurisdiction: Final Orders: Appeal and Error.** An appellate court has the power to determine whether it has jurisdiction over an appeal and to correct jurisdictional issues, even though a party's failure to appeal from a final order precludes an appellate court from exercising jurisdiction over the matters decided in the order.
4. ____: ____: ____. An appellate court lacks jurisdiction to entertain an appeal unless it is from a final order or a judgment.
5. ____: ____: ____. The first step in determining the existence of appellate jurisdiction is to determine whether the lower court's order was final and appealable.
6. **Final Orders: Appeal and Error.** Under Neb. Rev. Stat. § 25-1902 (Reissue 2008), an appellate court may review three types of final orders: (1) an order affecting a substantial right in an action that, in effect, determines the action and prevents a judgment; (2) an order affecting a substantial right made during a special proceeding; and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered.
7. **Injunction: Final Orders: Appeal and Error.** A temporary injunction is not a final, appealable order.
8. **Arbitration and Award.** A motion to compel arbitration invokes a special proceeding.
9. **Injunction: Final Orders: Appeal and Error.** A court's temporary injunction or stay that merely preserves the status quo pending a further order is not an order

that amounts to a dismissal of the action or that permanently denies relief to a party. It is an interlocutory order that is not appealable.

Appeal from the District Court for Douglas County: DUANE C. DOUGHERTY, Judge. Appeal dismissed.

Jeffrey A. Silver for appellants.

Robert D. Mullin, Jr., of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

CONNOLLY, J.

## SUMMARY

Shasta Linen Supply, Inc. (Shasta), a California corporation, contracted to have the appellant insurer, Applied Underwriters, Inc. (Applied), a Nebraska corporation, provide workers' compensation coverage to Shasta. Shasta accepted Applied's proposed policy through an agreement entitled a "Request to Bind Coverages & Services." On the same day, Shasta entered into a "Reinsurance Participation Agreement" (RPA) with Applied's subsidiary, Applied Underwriters Captive Risk Assurance Company, Inc. (AUCRA), a British Virgin Islands corporation. The request to bind and the RPA contained conflicting provisions regarding the parties' agreed-upon arbitration process for resolving disputes.

After a dispute arose, Shasta filed this action, seeking a declaration that the request to bind required arbitration by "JAMS" in Omaha, Nebraska. Shasta also sought injunctive relief. Applied and AUCRA moved to dismiss the proceeding, arguing that the RPA required Shasta's contract dispute to be arbitrated by the American Arbitration Association (AAA). The court determined that it had jurisdiction to decide which contract provision controlled. It issued a temporary injunction and stay of the AAA arbitration until it decided the parties' rights. Applied and AUCRA appeal from this order, assigning that the court erred in exercising jurisdiction over the matter and granting a temporary injunction.

We conclude that Applied and AUCRA have not appealed from a final order and dismiss their appeal.

## BACKGROUND

In 2009, Shasta applied for workers' compensation insurance coverage from Applied, and Applied responded with a quote for a proposed policy. The proposed policy included a profit-sharing plan that was directly tied to Shasta's execution of the RPA:

> This Profit Sharing Plan is a reinsurance transaction separate from the guaranteed cost policies. Your risk retention is created by your participation in, and cession of allocated premiums and losses to our facultative reinsurance facility, [AUCRA]. . . .
>
>       . . . .
>
> Your actual, final net cost will be determined using the ultimate costs of your claims along with the factors and tables set forth in your [RPA].

About January 5, 2010, Applied prepared and presented to Shasta's president the request to bind and the RPA. In the request to bind, through language drafted by Applied, Shasta requested that

> [Applied] through its affiliates and/or subsidiaries (collectively "Applied") . . . cause to be issued to [Shasta] one or more workers' compensation insurance policies and such other insurance coverages identified in the Proposal (collectively the "Policies") subject to [Shasta's] executing the following agreements (collectively the "Agreements"): (1) [the RPA]; and where available, (2) Premium Finance Agreement.

The request to bind included an agreement to resolve any dispute "involving the Proposal or any part thereof (including but not limited to the Agreements and Policies)" through binding arbitration by JAMS in Omaha. The request to bind stated that Shasta had paid $100 for this dispute resolution agreement and that the agreement was enforceable independent of any other agreement.

Shasta's president signed the request to bind on January 5, 2010. Also, on the same day, he signed the RPA, which was

the reinsurance program that was tied to the profit-sharing plan in the workers' compensation policy. Under the RPA, Shasta agreed to share a portion of AUCRA's premiums and losses related to its underwriting activities. As noted, the RPA contained a conflicting arbitration provision. Paragraph 13 required the parties to arbitrate any dispute under the agreement "in the British Virgin Islands under the provisions of the [AAA]." A separate integration clause provided that the RPA superseded all prior understandings between the parties.

In March and April 2013, Shasta and Applied disputed the amount of money that Shasta owed to Applied, apparently over charges tied to the RPA. In June, the AAA acknowledged receipt of AUCRA's demand for arbitration. In July, Shasta objected to AAA arbitration in the British Virgin Islands. In August, the AAA responded that absent a court order to stay the proceeding, it would conduct the arbitration. In September, Shasta filed this action. In an affidavit, AUCRA's attorney stated that at some point, AUCRA had agreed to arbitrate in Omaha, and that in October, the AAA had appointed an Omaha attorney to be its arbitrator.

Shasta's complaint sought (1) a declaratory judgment that the defendants were not entitled to arbitration by the AAA and (2) temporary and permanent injunctive relief from the AAA arbitration. Shasta also moved for a "Temporary Stay and/or Preliminary Injunction" of the AAA arbitration. The defendants moved to dismiss the complaint, alleging that the court lacked jurisdiction to decide the matter and that Shasta had failed to state a claim for which relief could be granted.

After a hearing, the court determined that it had jurisdiction to decide which contract governed the arbitration procedures for the parties' dispute. The court also concluded that Shasta had stated sufficient facts for relief. It determined that the request to bind defined the term "agreements" to mean the RPA and, where applicable, a premium finance agreement. So it reasoned that the RPA was necessarily included within the document's arbitration clause: "'[A]ny claims, disputes and/or controversies between the parties involving the [P]roposal [or] any part thereof (including but not limited to the [A]greements and [P]olicies) shall be resolved'" through

the JAMS arbitration. The court also noted that Shasta had paid additional consideration for the arbitration procedures in the request to bind. It concluded that "there is a high probability that Shasta will prevail" on the merits. Additionally, the court concluded that Shasta would be irreparably harmed unless it issued a temporary injunction because its monetary exposure was significantly higher under the RPA's arbitration procedures. Accordingly, it issued a temporary injunction pending the final resolution of Shasta's complaint.

## ASSIGNMENTS OF ERROR

Applied and AUCRA contend that the court erred in (1) determining that it had subject matter jurisdiction over the parties' contract dispute and (2) issuing a temporary injunction and staying the AAA arbitration proceedings. The parties also dispute whether Applied and AUCRA have appealed from a final order.

## STANDARD OF REVIEW

[1] A jurisdictional question that does not involve a factual dispute presents a question of law.[1]

## ANALYSIS

[2,3] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction.[2] Applied and AUCRA incorrectly argue that we have decided the jurisdictional dispute by denying Shasta's motion for summary dismissal on jurisdictional grounds. We have the power to determine whether we have jurisdiction over an appeal and to correct jurisdictional issues,[3] even though a party's failure to appeal from a final order precludes us from exercising jurisdiction over the matters decided in the order.[4] We turn to the parties' jurisdictional arguments.

---

[1] See *Kelliher v. Soundy*, 288 Neb. 898, 852 N.W.2d 718 (2014).

[2] See *In re Estate of Gsantner*, 288 Neb. 222, 846 N.W.2d 646 (2014).

[3] See, e.g., *Conroy v. Keith Cty. Bd. of Equal.*, 288 Neb. 196, 846 N.W.2d 634 (2014).

[4] See *Pinnacle Enters. v. City of Papillion*, 286 Neb. 322, 836 N.W.2d 588 (2013).

Shasta contends that a court's order overruling a motion to dismiss for lack of jurisdiction and an order issuing a temporary injunction are not final orders. It also argues that the court's order did not affect a substantial right in a special proceeding because it only determined which arbitration provision controls and did not deny Applied and AUCRA the right to arbitrate.

Applied and AUCRA disagree. They contend that the district court's order did affect a substantial right in a special proceeding and is therefore a final order. They argue that an order "requiring [them] to go through the time and expense of a trial is without question the functional equivalent of a denial of a motion to compel arbitration."[5]

[4,5] It is well settled that we lack jurisdiction to entertain an appeal unless it is from a final order or a judgment.[6] We recognize that Applied and AUCRA's claim that the district court lacked jurisdiction to decide their dispute also raises an issue of appellate jurisdiction: If the court from which an appeal was taken lacked jurisdiction, then the appellate court acquires no jurisdiction.[7] But when an appeal presents these two distinct jurisdictional issues, the first step in determining the existence of appellate jurisdiction is to determine whether the lower court's order was final and appealable.[8] So we first decide whether Applied and AUCRA are appealing from a final order or judgment.

"A judgment is the final determination of the rights of the parties in an action."[9] The action here is one for a declaratory judgment and injunctive relief, and there is no judgment in this action. In the court's order of a temporary injunction and stay, it concluded that Shasta was highly likely to prevail on its contract claim, but it did not finally determine that issue. It merely

---

[5] Brief for appellants at 9.

[6] See *Nichols v. Nichols*, 288 Neb. 339, 847 N.W.2d 307 (2014).

[7] *Federal Nat. Mortgage Assn. v. Marcuzzo*, 289 Neb. 301, 854 N.W.2d 774 (2014).

[8] *Big John's Billards v. State*, 283 Neb. 496, 811 N.W.2d 205 (2012).

[9] Neb. Rev. Stat. § 25-1301(1) (Reissue 2008).

stayed the arbitration proceedings until it could decide which contract controlled the arbitration procedures that the parties were bound to follow. So we have jurisdiction only if Applied and AUCRA have appealed from a final order under Neb. Rev. Stat. § 25-1902 (Reissue 2008).

[6] Under § 25-1902, an appellate court may review three types of final orders: (1) an order affecting a substantial right in an action that, in effect, determines the action and prevents a judgment; (2) an order affecting a substantial right made during a special proceeding; and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered.[10]

[7] Shasta correctly argues that a temporary injunction is not a final, appealable order.[11] And for multiple reasons, the court's order is distinguishable from the stay that was a final order in *Kremer v. Rural Community Ins. Co.*,[12] the case on which Applied and AUCRA rely.

[8] In *Kremer*, we reviewed a court's order sustaining motions to compel arbitration and stay court proceedings. A motion to compel arbitration invokes a special proceeding,[13] so the issue was whether the appeal was from a final order in a special proceeding,[14] not an action. We concluded that "an order compelling arbitration or staying judicial proceedings pending arbitration is a final order under the second category of § 25-1902: It affects a substantial right in a special proceeding."[15]

We had previously explained that the Federal Arbitration Act does not preempt state procedural rules for appeals.[16] In

---

[10] *Kremer v. Rural Community Ins. Co.*, 280 Neb. 591, 788 N.W.2d 538 (2010).

[11] *Pennfield Oil Co. v. Winstrom*, 267 Neb. 288, 673 N.W.2d 558 (2004).

[12] *Kremer, supra* note 10.

[13] See *id.*, citing *Webb v. American Employers Group*, 268 Neb. 473, 684 N.W.2d 33 (2004).

[14] See § 25-1902(2).

[15] *Kremer, supra* note 10, 280 Neb. at 602, 788 N.W.2d at 549.

[16] See *Webb, supra* note 13.

*Kremer*, we agreed with the reasoning of courts that permit parties to appeal from a final order compelling arbitration, regardless of whether the trial court also dismissed the court proceedings. We concluded that the same reasoning applies to an order compelling arbitration when the court stays court proceedings pending arbitration. In either case, "the order has the same effect: The parties cannot litigate their dispute in state courts because by enforcing the arbitration agreement, the order divests the court of jurisdiction to hear their dispute."[17] We recognized that "an order issuing a stay within an action or proceeding is usually interlocutory and not appealable absent a statute or court rule permitting an interlocutory appeal."[18] But we concluded that the applicable rule was the one that permits a party to appeal from "a stay which is tantamount to a dismissal of an action or has the effect of a permanent denial of the requested relief."[19] We held that such orders are a final determination of arbitrability.

We further explained in *Kremer* that the order affected a substantial right under § 25-1902(2) for two reasons. First, we reasoned that a party cannot effectively vindicate a claim that it is entitled to arbitrate *or* to litigate in court after a court has compelled it to do that which the party claims it is not required to do. More important, we concluded that an order disposing of all the issues raised in an independent special proceeding obviously affects the subject matter of the litigation by determining all of the parties' rights raised in the proceeding.

[9] But these circumstances are not present here. Applied and AUCRA did not file a motion to compel arbitration, so this is not a special proceeding. And even if they had filed a motion to compel, the court would not have finally determined the parties' rights. It has not directed the parties to arbitrate under any arbitration procedures and obviously has not directed the parties to litigate their underlying dispute in court. So even if we equated this step in the action to a

---

[17] *Kremer, supra* note 10, 280 Neb. at 600-01, 788 N.W.2d at 548.

[18] *Id.* at 600, 788 N.W.2d at 548.

[19] *Id.*

special proceeding invoked by a motion to compel arbitration, the order would not be final or affect any substantial right. Finally, a court's temporary injunction or stay that merely preserves the status quo pending a further order is not an order that amounts to a dismissal of the action or that permanently denies relief to a party.[20] So the stay here was not a final order in an action that effectively determines the action and prevents a judgment under § 25-1902(1). We conclude that the court's temporary injunction and stay is an interlocutory order that is not appealable.

We recognize that Applied and AUCRA contend they are entitled to have the AAA arbitrators decide which contract provision governs the arbitration process. But they are not prejudiced by waiting to appeal that issue until the court issues a final judgment in the declaratory judgment action. Accordingly, we dismiss this appeal.

APPEAL DISMISSED.

---

[20] See *Pennfield Oil Co., supra* note 11.

---

DEBRA S. RYDER, APPELLANT, V.
ROCKY R. RYDER, APPELLEE.
___ N.W.2d ___

Filed April 10, 2015.    No. S-14-294.

1. **Motions to Vacate: Proof: Appeal and Error.** An appellate court will reverse a decision on a motion to vacate or modify a judgment only if the litigant shows that the district court abused its discretion.
2. **Judges: Words and Phrases.** A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.
3. **Divorce: Property Settlement Agreements.** If the terms of a property settlement agreement with respect to real and personal property and maintenance are not found unconscionable, the agreement is binding upon the dissolution court and the initial decree must carry such agreement into effect.
4. **Judgments: Divorce: Property Settlement Agreements.** A dissolution decree which approves and incorporates into the decree the parties' property settlement agreement is a judgment of the court itself.