THOMAS J. KELLEY AND LAURA R. KELLEY, APPELLEES, V.
BENCHMARK HOMES, INC., A NEBRASKA CORPORATION,
APPELLANT.

550 N.W.2d 640

Filed June 28, 1996.   No. S-94-115.

James F. Kasher and David G. Wilwerding, of Croker, Huck, Kasher, DeWitt, Anderson & Gonderinger, P.C., for appellant.

Thomas J. Kelley, of McGrath, North, Mullin & Kratz, P.C., for appellees.

WHITE, C.J., CAPORALE, FAHRNBRUCH, WRIGHT, CONNOLLY, and GERRARD, JJ. and LUTHER, D.J.

PER CURIAM.

This matter is before the court as an interlocutory appeal pursuant to the federal Arbitration Act, 9 U.S.C. §§ 1 through 16 (1994) (AA). The appellant, Benchmark Homes, Inc., filed a motion to stay proceedings in the district court for Douglas County. Benchmark asserts, pursuant to the express terms of a warranty contract, that the appellees, Thomas J. Kelley and Laura R. Kelley, must first submit the causes alleged in their second amended petition to arbitration for resolution as a condition precedent to filing suit. The district court denied Benchmark's motion, and it is from this denial that Benchmark appeals. We find that the district court erred and accordingly reverse the judgment and remand the cause for further proceedings.

## FACTUAL BACKGROUND

The Kelleys purchased a new home from Benchmark, closing the purchase on October 29, 1992. Within 1 month of closing, the Kelleys wrote to Benchmark and requested that it repair or inspect 24 separately identified defects in their new home. The record indicates that over the course of the next 12 months, the Kelleys wrote numerous letters to Benchmark and its counsel in an effort to get repairs made.

Benchmark was unable to satisfy the Kelleys, and they filed this suit. In their second amended petition, the Kelleys alleged four causes of action: trespass; breach of an implied warranty; breach of an express warranty; and damages for latent defects for which Benchmark, as a mass developer of homes, was strictly liable.

The alleged breach of the express warranty at issue arises under the Home Buyers Warranty the Kelleys purchased from Builders Structural Services, Inc. II (BSS), a Colorado corporation. The purchase price of this warranty was determined by a formula based upon the price of their home. The Kelleys purchased a 1-year workmanship/2-year systems warranty and a 10-year structural coverage warranty, in addition to a separate 5-year extended structural coverage warranty. In the application for home enrollment completed by the Kelleys and Benchmark, paragraph 11 explicitly states that "the warranty is an *EXPRESS LIMITED WARRANTY* and that no person or entity shall have any liability whatsoever, by implication or otherwise, for claims which are not *EXPRESSLY* covered by the warranty documents." (Emphasis in original.) Moreover, the BSS Home Buyers Warranty agreement contains an arbitration clause which states in pertinent part:

> If the Homebuyer(s) have submitted their complaints to the Builder and Home Buyers Warranty as described in the section above and the Homebuyer(s) and Builder continue to disagree on any defective items (including repairs attempted by the Builder) which might be covered hereunder, the Builder or Homebuyer(s) may request an impartial, third-party arbitration hearing administered through a Home Buyers Warranty approved arbitration service. . . . [T]he arbitration provided for hereunder shall not be legally binding, but shall be a condition precedent to the commencement of any litigation by any party to compel compliance with the warranty or to seek relief for any dispute arising out of this program.

Pursuant to the terms of the BSS warranty agreement, Benchmark requested arbitration of the matters set forth in the Kelleys' second amended petition. The Kelleys refused arbitration, contending that arbitration agreements entered into

before a dispute arises are against public policy and therefore void. Benchmark then moved the district court for an order staying the Kelleys' action pending arbitration as required under the terms of their Home Buyers Warranty agreement. The district court denied Benchmark's motion to stay proceedings, finding that "the obligations under the express warranty are wholly intrastate and do not involve commerce."

## SCOPE OF REVIEW

Whether a stay should be granted and arbitration required is a question of law. See *Dowd v. First Omaha Sec. Corp.*, 242 Neb. 347, 495 N.W.2d 36 (1993). On questions of law, an appellate court has an obligation to reach its own conclusions independent of those reached by the lower courts. *Scholl v. County of Boone, ante* p. 283, 549 N.W.2d 144 (1996); *State v. Bundy, ante* p. 213, 549 N.W.2d 122 (1996).

## ASSIGNMENT OF ERROR

Benchmark asserts that the district court erred in finding that the express warranty at issue in the Kelleys' second amended petition did not involve commerce within the meaning of the AA.

## ANALYSIS

Both parties agree that the express warranty evidenced by the BSS Home Buyers Warranty agreement is subject to arbitration if it evidences "a transaction involving commerce to settle by arbitration a controversy," within the meaning of § 2 of the AA. Section 2 thereof provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Under language in Neb. Const. art. I, § 13, reading that "[a]ll courts shall be open, and every person, for any injury done him in his lands, goods, person or reputation, shall have a remedy by due course of law, and justice administered without denial or delay," we held invalid a statute authorizing binding arbitration of future disputes and contract clauses providing for such. See *State v. Nebraska Assn. of Pub. Employees*, 239 Neb. 653, 477 N.W.2d 577 (1991). However, the Supremacy Clause of the U.S. Constitution dictates that state law, including state constitutional law, is superseded to the extent that it conflicts with federal law. U.S. Const. art. VI, cl. 2; *Dowd, supra.*

In *Dowd*, the district court had required the plaintiffs to submit to arbitration their dispute concerning a breach of their customer agreement which alleged a wrongful liquidation of a margin account by their securities broker. The customer agreement signed by the Dowds and First Omaha Securities provided that Nebraska law would govern the contract and that any disputes from the agreement would be submitted to arbitration.

In affirming the district court's judgment, we reaffirmed that under Nebraska law, a predispute agreement to compel arbitration is void. However, we acknowledged that in *Southland Corp. v. Keating*, 465 U.S. 1, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984), the U.S. Supreme Court held a provision of the California Franchise Investment Law, which required judicial consideration of all claims brought under it, was preempted to the extent it conflicted with the AA. Thus, it followed that *Southland Corp.* must also require that a choice-of-law provision in a contract cannot prevent the enforcement of an otherwise valid arbitration clause in the same contract. In addition, we recognized that there are but two limitations to the enforceability of arbitration provisions governed by the AA. The arbitration clause must be part of a contract " ' "evidencing a transaction involving commerce," ' " and arbitration clauses may be revoked upon " ' "grounds as exist at law or in equity for the revocation of any contract." ' " *Dowd*, 242 Neb. at 354, 495 N.W.2d at 41, quoting *Southland Corp., supra.*

There are two issues raised in the instant action which require that we again examine the extent to which the AA preempts our state constitutional preference toward providing our citizens a remedy in the due course of law by holding all courts open. The first issue is whether the BSS Home Buyers Warranty contract evidences a transaction involving commerce within the meaning of the act. The second issue, raised in the Kelleys' supplemental brief, is whether a nonbinding predispute arbitration clause is within the meaning of the phrase "to settle by arbitration," as required by § 2 of the act.

*Evidencing Transaction Involving Commerce.*

Dispositive of the issue of whether the BSS contract evidences a transaction involving commerce is *Allied-Bruce Terminix Companies, Inc. v. Dobson*, ____ U.S. ____, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995). In *Allied-Bruce Terminix Companies, Inc.*, Steven Gwin purchased a lifetime termite protection plan for his home in Birmingham, Alabama, from the local Terminix office. Four years later, Gwin sold his home to the Dobsons. Terminix reinspected the house prior to closing and reported the house to be termite free. Subsequent to closing, the Dobsons discovered the house was infested with termites. The Dobsons found Allied-Bruce's efforts to treat and repair the house inadequate and filed suit against the Gwins, Allied-Bruce, and Terminix in state court. Allied-Bruce and Terminix asked the court for a stay to allow arbitration to proceed as required by the lifetime termite protection plan purchased by Gwin. Ultimately, the Alabama Supreme Court upheld the lower court's denial of the stay based upon a state statute making written predispute arbitration agreements invalid and unenforceable.

As a threshold matter, the U.S. Supreme Court recognized that the basic purpose of the AA was to overcome the refusal of courts to enforce agreements to arbitrate. The Court then concluded that the words " ' "involving commerce" ' " require a broad interpretation to give effect to the act's basic purpose, to put arbitration provisions on the same footing as a contract's other terms. 115 S. Ct. at 840. Thus, "the word 'involv-

ing,' like 'affecting,' signals an intent to exercise Congress's commerce power to the full." 115 S. Ct. at 841.

The U.S. Supreme Court then found that the words " 'evidencing a transaction' " must be interpreted as meaning that the transaction in fact must involve interstate commerce even if the transaction as contemplated by the parties did not involve an interstate commerce connection. 115 S. Ct. at 841. The Court reasoned that this interpretation was necessary to avoid costs and delays brought on by litigation concerning the intent of the parties and to give effect to Congress' intent to make arbitration agreements universally enforceable.

The Court determined that the arbitration clause there at issue concerned a transaction that in fact involved interstate commerce for two reasons. First, Terminix and Allied-Bruce were clearly multistate businesses, and second, the materials used to treat the house for termites and to repair the damage came from outside Alabama.

Application of *Allied-Bruce Terminix Companies, Inc.*, to the case now before us compels the conclusion that the BSS Home Buyers Warranty contract evidences a transaction that in fact involves commerce within the meaning of the AA. The BSS warranty was an agreement between the Kelleys and BSS, and BSS is an out-of-state business. The Home Buyers Warranty booklet given to the Kelleys clearly identified that district claims offices for Home Buyers Warranty were located in New Jersey, Georgia, Texas, and California. In addition, the homeowner information pamphlet given to the Kelleys indicated that Home Buyers Warranty itself has an Aurora, Colorado, address. Moreover, John C. Czerwinski, president of Benchmark, stated in his affidavit that a significant portion of the materials used to construct the Kelley home were manufactured outside Nebraska.

Thus, the BSS warranty agreement clearly constituted a transaction which in fact involved interstate commerce and is thus subject to the AA. The agreement evidences a transaction between a local homeowner and an out-of-state company, and the transaction required the use of goods which traveled in the stream of interstate commerce.

*To Settle by Arbitration.*

Alternatively, the Kelleys argue that a predispute contract clause requiring nonbinding arbitration cannot be considered an agreement "to settle by arbitration" within the meaning of § 2 of the AA. In essence, the Kelleys argue that nonbinding arbitration settles nothing in the sense that there is a finality to the controversy. Since nonbinding arbitration is not a final settlement, it must not be within the scope of § 2.

The Kelleys' argument is not supported by the construction of the AA given by other courts. The act was an attempt by Congress to place an arbitration agreement upon the same footing as other contracts and to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985).

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983).

The contract clause agreed to by the Kelleys provided that they would submit to an impartial third-party arbitration hearing, administered through a Home Buyers Warranty approved arbitration service, any dispute arising out of the BSS warranty as a condition precedent to the commencement of any litigation to compel compliance with the BSS warranty. The AA requires that this contract provision be given the same effect as any other contract provision. In considering this issue, other courts have found that contract clauses which require that parties submit to nonbinding arbitration or clauses that require arbitration as a condition precedent to the commencement of litigation are within the scope of the act.

For example, an agreement between competing bowling equipment manufacturers to obtain a nonbinding advisory opinion concerning disputes which might arise over comparative advertising claims was found to be within the scope of the

AA. *AMF Inc. v. Brunswick Corp.*, 621 F. Supp. 456 (E.D.N.Y. 1985). In construing the scope of the Illinois Uniform Arbitration Act, the Illinois Court of Appeals stated: "It is not necessary for the parties to an arbitration agreement to be able to solve all disputes between them at arbitration. Rather, the court must give effect to the arbitration agreement and require those issues to be arbitrated which are covered by the agreement." *Heiden v. Galva Foundry Co.*, 223 Ill. App. 3d 163, 168, 584 N.E.2d 518, 522 (1991). "When a plaintiff 'bases its right to sue on the contract itself, not upon a statute or some other basis outside the contract, the provision requiring arbitration as a condition precedent to recovery must be observed.' " *Cheshire Place v. West of England Ship Owners Mut.*, 815 F. Supp. 593, 597 (E.D.N.Y. 1993).

Accordingly, the Home Buyers Warranty clause requiring that the parties submit to nonbinding arbitration a dispute arising under their agreement as a condition precedent to litigation is within the scope of the AA and must be given the same effect as any other contract provision. Therefore, the district court's denial of Benchmark's motion to stay the proceedings with respect to the BSS Home Buyers Warranty agreement is in error and requires reversal.

*Stay of Other Causes of Action.*

However, this does not end our inquiry. The Kelleys argue that even if the breach of an express warranty claim in their third cause of action must be stayed pursuant to arbitration, this does not require that their remaining causes of action must also be stayed.

Arbitration is purely a matter of contract, and a party cannot be required to submit a dispute to arbitration unless he or she has agreed to do so. See *Creative Securities Corp. v. Bear Stearns & Co.*, 671 F. Supp. 961 (S.D.N.Y. 1987), *aff'd* 847 F.2d 834 (2d Cir. 1988). When considering a motion to stay litigation in favor of arbitration, a court must first determine whether an agreement to arbitrate exists and then decide whether the dispute before it arises under the agreement and is therefore subject to arbitration. *Wilson v. Subway Sandwiches Shops, Inc.*, 823 F. Supp. 194 (S.D.N.Y. 1993).

Nonetheless, courts inherently possess the power to stay proceedings when required by the interests of justice, and the decision of whether to grant a motion to stay is vested in the discretion of the trial court. *Schuessler v. Benchmark Mktg. & Consulting*, 243 Neb. 425, 500 N.W.2d 529 (1993). In making its decision, the trial court is to balance the competing needs of the parties, taking into account, among other things, the interest of the courts, the probability that the proceedings will work a constitutional violation on the movant, the presence or absence of hardship or inequity, and the burden of proof. *Id.*

The Kelleys did not agree to arbitrate all disputes which may arise between them and Benchmark. Instead, the record indicates that the Kelleys agreed to arbitration as a condition precedent to litigation only those disputes arising out of a claim based upon defects expressly covered by the BSS Home Buyers Warranty. However, because the BSS Home Buyers Warranty is subject to nonbinding arbitration, the interests of judicial economy require that the Kelleys' remaining causes of action be stayed pending the results of the arbitration of the BSS Home Buyers Warranty claim. Allowing the remaining causes of action to continue could result in an unnecessary duplication of litigation. See *Madison Beauty Supply v. Helene Curtis*, 167 Wis. 2d 237, 481 N.W.2d 644 (Wis. App. 1992).

## CONCLUSION

Being erroneous, the order of the district court overruling Benchmark's motion to stay the proceedings is reversed, and the cause is remanded to the district court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

LANPHIER, J., not participating.