JERRY J. WEBB, APPELLEE, V. AMERICAN EMPLOYERS GROUP,
AN INSURANCE COMPANY AUTHORIZED AND DOING BUSINESS
IN THE STATE OF NEBRASKA, APPELLANT.
684 N.W.2d 33

Filed July 30, 2004.   No. S-03-954.

Jeffrey A. Silver for appellant.

Roger R. Holthaus and Joseph L. Howard, of Holthaus Law Offices, P.C., L.L.O., for appellee.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Jerry J. Webb brought an action against American Employers Group (AEG), his health insurance provider, after AEG denied

coverage for surgery performed on Webb's right shoulder. After a bench trial, the district court for Douglas County entered judgment in favor of Webb. AEG filed this appeal, which we moved to our docket on our own motion pursuant to our authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## FACTS

In 1997, Webb began working as an installer for Office One, Inc. Office One was a "client company" of AEG, which provided payroll, health insurance, and workers' compensation services to Office One and its employees. Webb's duties with Office One involved heavy lifting. In early 2000, Webb experienced increasing discomfort in his right shoulder. On May 30, 2000, he had surgery on his shoulder at Immanuel Medical Center in Omaha, Nebraska.

AEG provided health insurance to Webb as an Office One employee. Webb paid for this insurance through an automatic payroll deduction of $35.12 every 2 weeks. Office One also contributed $20 a month to the premium. The health insurance was an "Omnea Group Health Care Plan" established by AEG for the benefit of its client companies and their eligible employees and dependents.

David Kavan, the president of Office One, testified that he granted Webb a leave of absence in early May 2000 so that Webb could have the surgery performed on his shoulder. The last day on which Webb actually performed labor for Office One was May 15. Kavan testified, however, that Webb did not terminate his employment with Office One until after the surgery, when he realized he would reinjure the shoulder if he continued performing his duties as an installer.

Sometime after Webb last performed labor for Office One, AEG asked Kavan to complete a termination record for Webb. Although AEG provided health insurance to Office One from 1996 to 2001 and other employees had left during that time period, Kavan had never before been asked to complete such a record on an employee. A termination record dated July 10, 2000, and signed by Kavan was offered and admitted at trial. Kavan testified that he remembered filling out part of the record,

but did not recall filling in "5/15/00" as the "LAST DAY WORKED" or "5/01/00" as the "Date notice was given." He testified that the last day worked and the date notice was given were not in his handwriting.

Office One also filled out a second termination record for Webb dated August 16, 2000. There is contradictory evidence whether this record was requested by Webb and Office One or by AEG. The August 16 record was completed by Kavan's partner, Kevin Jensen. This record indicated that Webb's last day of work was "6/20/00" and that the date he gave notice was "5/18/00." Kavan testified that he was familiar with Jensen's handwriting and that the dates for last day of work and the date notice was given were not written by Jensen. Kavan further testified that the dates on the August 16 termination record were incorrect. Office One did not receive a refund of any premiums it paid for Webb's health insurance.

On cross-examination, Kavan admitted that although the termination record contained a space in which he could have indicated that Webb was on a leave of absence, he did not fill in that section.

Webb testified that he requested and received a leave of absence from Kavan in early May 2000. He further testified that he obtained precertification for his surgery as required by his insurance plan by calling the number on the back of his insurance card in early May. He was familiar with the precertification process because he had utilized it on prior occasions. He testified that after calling the number on his insurance card and providing the requisite information, he was informed that the surgery would be covered.

Webb's last employee contribution to his health insurance premium was deducted from his May 25, 2000, paycheck. On July 12, Webb received a letter from AEG notifying him that his insurance coverage "will terminate" on May 15, 2000, at midnight and informing him of his option to continue coverage via COBRA. Subsequently, AEG mailed Webb a check dated October 13, 2000, in the amount of $32.43, which he understood was a return of his premium for the time period after May 15. Webb admitted cashing the check, but testified at trial that he did not understand that by doing so he would be retroactively canceling his insurance. He further testified that he would be

willing to return the money to AEG. On cross-examination, Webb admitted that he did not receive any type of authorization number for the surgery when he called to precertify. He also did not remember receiving a confirmation letter. An employee of the physician who performed Webb's surgery testified that on May 18, 2000, she called an "888" telephone number and spoke to a "Jo Ann" who gave her a precertification number of "1125" for Webb's surgery.

Sue Flanagan, the manager of secondary benefits at AEG, testified that she reviewed Webb's termination records. She testified that in the general course of business, AEG would complete certain information on the forms, but that the information regarding the last day worked and date notice was given would be provided and filled in by the client prior to AEG's receiving the form. She testified that the "last day worked" on the record was a significant date because "[i]t would indicate when the insurance coverage would end if premiums were not collected."

Flanagan testified that AEG contracted with a company called PPHA to provide precertification services. When precertification is granted, a precertification number is given. Flanagan testified that although she was not sure what PPHA's precertification numbers were, "normally it had letters in front of it and letters behind it." In addition, once precertification is given, a confirmation letter is mailed to the physician, the hospital, and the employee.

Flanagan also testified that she exchanged correspondence with Nebraska's Department of Insurance regarding Webb's claim. Although she wrote three letters to the department regarding Webb's claim, she could not recall ever raising the precertification issue. Flanagan further testified that on August 15, 2001, her position was that Webb should file a civil lawsuit to determine whether the surgery was covered.

On March 6, 2002, Webb filed this action in which he alleged that AEG was liable for the medical expenses he incurred in connection with the shoulder surgery under alternative theories of recovery, including breach of contract, estoppel, and intentional misrepresentation. On April 3, AEG filed a motion to dismiss and to compel arbitration. An evidentiary hearing on the motion was held on April 30, but the bill of exceptions from that hearing is

not included in the record before us on appeal. On May 15, the district court entered an order denying the motion to compel arbitration, concluding that AEG waived the arbitration provision in the insurance policy by indicating in correspondence with the Department of Insurance that Webb should file a civil lawsuit to resolve the controversy. Neither party filed an appeal from the May 15 order.

On May 31, 2002, AEG filed an answer generally denying the allegations in Webb's petition and alleging affirmative defenses. Following a bench trial, the court entered an order on July 24, 2003, in which it found that Webb was covered under the health insurance provided by AEG at the time of his shoulder surgery and that AEG was therefore obligated to pay the disputed medical expenses. The court entered judgment in favor of Webb in the amount of $7,449.74, together with an attorney fee of $2,500 pursuant to Neb. Rev. Stat. § 44-359 (Reissue 1998). AEG perfected this appeal on August 15, 2003.

## ASSIGNMENTS OF ERROR

AEG assigns, restated, that the district court erred in (1) failing to compel arbitration as provided for in the policy, (2) failing to find that Webb had not paid the premium for the period in which the surgery was performed, (3) failing to find that Webb's employment and thus his insurance coverage ended on May 15, 2000, (4) admitting medical bills into evidence over AEG's objection, and (5) awarding attorney fees.

## STANDARD OF REVIEW

When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below. *Arthur v. Microsoft Corp.*, 267 Neb. 586, 676 N.W.2d 29 (2004); *In re Estate of Pfeiffer*, 265 Neb. 498, 658 N.W.2d 14 (2003).

In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly erroneous. *Home Pride Foods v. Johnson*, 262 Neb. 701, 634 N.W.2d 774 (2001); *O'Connor v. Kaufman*, 260 Neb. 219, 616 N.W.2d 301 (2000).

## ANALYSIS

We note as an initial matter that Webb's cause of action arises under the Employee Retirement Income Security Act of 1974 (ERISA). Because his claim is for recovery of benefits under the terms of an ERISA plan, it falls within the provisions of 29 U.S.C. § 1132(a)(1)(B) (2000), and thus, pursuant to 29 U.S.C. § 1132(e)(1), a state court of competent jurisdiction has concurrent jurisdiction with federal district courts to award any benefits due.

### DENIAL OF MOTION TO COMPEL ARBITRATION

AEG contends that the district court erred in refusing to enforce the arbitration clause in the insurance policy it issued to Webb. The policy provides in relevant part:

> After exhausting the ERISA Claims Review and Appeal procedures noted above, if the claimant is still dissatisfied with the Plan Administrator's decision, prior to any legal action being brought against the Plan or the Plan Administrator, the appeal shall be submitted to the American Arbitration Association pursuant to its rules. The decision of the arbitrator(s) shall be binding and final on AEG and the Covered Person, with the costs of the arbitration to be borne by the party or parties as determined by the arbitrator(s).

Although AEG's motion to compel arbitration did not identify the statutory authority upon which it sought to enforce the arbitration provision of the policy, its counsel stated during oral argument of the appeal that the federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq. (2000), provides the enforcement mechanism.

The FAA applies to "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. "Commerce" as defined by the Act includes "commerce among the several States." 9 U.S.C § 1. The U.S. Supreme Court has given the FAA an expansive scope by broadly construing the phrase " 'a contract *evidencing a transaction* involving commerce.' " *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995) (cited in *Kelley v. Benchmark Homes, Inc.*, 250 Neb. 367, 550 N.W.2d 640 (1996)). The Court has held that the phrase " 'involving commerce' " requires a broad interpretation in order to give effect to the FAA's basic purpose, which is to put

arbitration provisions on the same footing as a contract's other terms. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. at 277. The Court has further noted that "the word 'involving,' like 'affecting,' signals an intent to exercise Congress' commerce power to the full." *Id.* The statutory phrase " 'evidencing a transaction' " has been construed by the Court to include transactions involving interstate commerce even where the parties did not contemplate an interstate commerce connection. *Id.*

Under this expansive interpretation of 9 U.S.C. § 2, we conclude that this case involves a transaction which would come within the scope of the FAA. During the relevant time period, Webb resided in and was employed in Douglas County, Nebraska, and AEG had an office in and regularly conducted business in Nebraska. However, the record reflects that AEG transacted business in other states and that portions of Webb's claim were processed outside of Nebraska. As directed in the insurance card issued to Webb, claim forms relating to his shoulder surgery were submitted to an address in Pewaukee, Wisconsin. The insurance card also provided that precertification was required for certain benefits and noted that precertification was administered by a company located in Concord, California. Flanagan explained at trial that AEG contracted with the California company to provide precertification services. Because the transaction at issue in this case falls within the scope of the FAA, the substantive issue of whether the motion to compel arbitration should have been granted is a question of federal law. See *Kelley v. Benchmark Homes, Inc., supra.* We note that claims arising under ERISA have generally been held to be arbitrable under the FAA. See *Eckel v. Equitable Life Assur. Soc. of the U.S.*, 1 F. Supp. 2d 687 (E.D. Mich. 1998) (citing cases).

However, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Hosack v. Hosack*, 267 Neb. 934, 678 N.W.2d 746 (2004); *Martin v. McGinn*, 267 Neb. 931, 678 N.W.2d 737 (2004). A jurisdictional question which does not involve a factual dispute is a matter of law. *Loontjer v. Robinson*, 266 Neb. 902, 670 N.W.2d 301 (2003); *State ex rel. Steinke v. Lautenbaugh*, 263 Neb. 652, 642 N.W.2d 132 (2002). The district court's order denying AEG's motion to

compel was entered on May 15, 2002. This appeal was not filed until August 15, 2003, 15 months after the entry of the order and subsequent to trial on the merits in the district court. Thus, if the denial of AEG's motion to compel was a final, appealable order, we would lack jurisdiction to consider the assignment of error pertaining to that issue.

Section 4 of the FAA sets forth a procedure whereby a party may seek judicial enforcement of a contractual arbitration provision. Section 16 governs appeals and provides in part that "[a]n appeal may be taken from . . . (1) an order . . . (B) denying a petition under section 4 of this title to order arbitration to proceed." 9 U.S.C. § 16(a). However, this statute provides that except in specified circumstances, "an appeal may not be taken from an interlocutory order . . . (2) directing arbitration to proceed under section 4 of this title." 9 U.S.C. § 16(b). The FAA does not indicate whether its provisions relating to appeals are applicable in state court actions, such as the instant case, where a party seeks to enforce an arbitration clause under the FAA.

In *Kelley v. Benchmark Homes, Inc.*, 250 Neb. 367, 368, 550 N.W.2d 640, 642 (1996), we considered the merits of an appeal from the denial of a motion to stay judicial proceedings in favor of arbitration, characterizing it as "an interlocutory appeal pursuant to the [FAA]." However, we did not specifically analyze the jurisdictional issue. In addressing this issue, other jurisdictions have concluded that the FAA does not necessarily preempt state procedural rules with respect to appeals. See, *Muao v. Grosvenor Properties Ltd.*, 99 Cal. App. 4th 1085, 122 Cal. Rptr. 2d 131 (2002); *Simmons v. Deutsche Financial Services*, 243 Ga. App. 85, 532 S.E.2d 436 (2000); *Clayco Const. Co. v. THF Carondelet Dev.*, 105 S.W.3d 518 (Mo. App. 2003); *Superpumper, Inc. v. Nerland Oil, Inc.*, 582 N.W.2d 647 (N.D. 1998); *Toler's Cove Homeowners v. Trident Const.*, 355 S.C. 605, 586 S.E.2d 581 (2003); *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266 (Tex. 1992). As stated by the Supreme Court of South Carolina:

> The federal policy favoring arbitration, as expressed in the FAA, is binding in state courts and supersedes inconsistent state law and statutes that invalidate arbitration agreements. . . . However, the FAA contains no express

preemptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration. . . . The question is whether the state law would undermine the goals and policies of the FAA. There is no federal policy favoring arbitration under a certain set of procedural rules and the federal policy is simply to ensure the enforceability of private agreements to arbitrate.

*Toler's Cove Homeowners v. Trident Const.*, 355 S.C. at 611, 586 S.E.2d at 584.

We conclude that in order to determine whether state law governs the finality for purposes of appeal of an order denying a motion to compel arbitration under the FAA, we must first apply our state procedural rules to determine if the order is final for purposes of appeal and then determine whether the result of that inquiry would undermine the goals and policies of the FAA. To the extent our opinion in *Kelly v. Benchmark Homes, Inc., supra,* conflicts with this analysis, it is disapproved.

In Nebraska, the three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered. Neb. Rev. Stat. § 25-1902 (Reissue 1995). See *Pennfield Oil Co. v. Winstrom*, 267 Neb. 288, 673 N.W.2d 558 (2004). In this case, the order denying the motion to compel clearly did not determine the action or prevent a judgment, and thus does not fall within the first category of final orders. See *Mumin v. Dees*, 266 Neb. 201, 663 N.W.2d 125 (2003). In addition, the order was not made on summary application in an action after judgment was rendered, and thus does not fall within the third category of final orders. See *id*. The question, therefore, is whether the denial of the motion to compel arbitration affected a substantial right and was made during a special proceeding.

The denial of the motion to compel arbitration clearly affected a substantial right, as it prevented AEG from enjoying the contractual benefit of arbitrating the dispute between the parties as an alternative to litigation. For the purposes of § 25-1902, a special proceeding includes every special statutory remedy which

is not in itself an action. See *Mumin v. Dees, supra*. A judgment rendered by the district court that is merely a step or proceeding within the overall action is not a special proceeding within the meaning of § 25-1902. *Id*. A special proceeding which affects a substantial right is, by definition, not part of an action. *Id*.

The order denying AEG's motion to compel was not merely a step or a proceeding within the overall action. Instead, the motion sought to completely halt the pending lawsuit and "transfer" the dispute to a nonjudicial forum as a matter of contractual right. The motion to compel arbitration is a specific statutory remedy which is not in itself an action. Thus, we conclude that the denial of a motion to compel arbitration is a final, appealable order under Nebraska law because it affects a substantial right and is made in a special proceeding.

This conclusion is consistent with the goals and policies underlying the FAA, which implements a " 'national policy favoring arbitration and [withdrawing] the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.' " *Cornhusker Internat. Trucks* v. *Thomas Built Buses*, 263 Neb. 10, 17, 637 N.W.2d 876, 882 (2002), quoting *Southland Corp. v. Keating*, 465 U.S. 1, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984). In enacting the FAA, it was "Congress' clear intent . . . to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 22, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). A direct appeal from an order denying a motion to compel arbitration furthers that purpose by permitting final resolution of the issue of arbitrability without having to first conclude a judicial proceeding on the merits, at which point the arbitral remedy would be rendered essentially meaningless. Our resolution of this issue under state law is consistent with the provision of the FAA which permits an appeal from an order of a U.S. District Court denying a motion to compel arbitration. 9 U.S.C. § 16(a)(1)(B). Accordingly, we conclude that the order denying AEG's motion to compel arbitration was a final, appealable order from which no timely appeal was taken, and we therefore have no jurisdiction to review that order in this appeal from the district court's subsequent determination on the merits.

## PAYMENT OF PREMIUM

In its second assignment of error, AEG contends that the district court erred in entering judgment in favor of Webb because of the undisputed evidence that it refunded the premium paid by Webb for the period in which the surgery was performed. AEG argues that the absence of a premium payment for the applicable time period resulted in a termination of coverage under the terms of the policy.

In its brief, AEG relies on *Brouilette v. DBV Enters.*, 9 Neb. App. 757, 619 N.W.2d 482 (2000), for the proposition that the burden is on an insured to keep a policy in force by the payment of premiums and is not on the insurer to exert every effort to prevent the insured from allowing a policy to lapse through failure to make premium payments. While this is a correct statement of the law, see *Struve Enter. v. Travelers Ins. Co.*, 243 Neb. 516, 500 N.W.2d 580 (1993), it does not apply to the facts of this case. The evidence clearly reveals that the insurance premium for the applicable time period was automatically deducted from Webb's paycheck and had been paid at the time of the surgery. AEG's argument that Webb failed to pay the premium is based on the fact that in October 2000, nearly 5 months after the surgery, it refunded the applicable premium to Webb after denying his claim, and he cashed the refund check. This retroactive return of Webb's premium does not negate the coverage that existed at the time of the surgery. Moreover, there is undisputed evidence in the record that AEG never refunded the portion of Webb's premium paid by Office One for the applicable time period. Thus, the district court was not clearly wrong in concluding that all premiums due under the policy were paid through May 31 and that the health insurance was in force at the time of the May 30 surgery. The district court properly credited the purported premium refund received and retained by Webb against the amount of AEG's liability.

## TERMINATION OF EMPLOYMENT

In its third assignment of error, AEG contends that the district court erred in failing to find that Webb's last day of work was May 15, 2000, and that his coverage terminated on that date pursuant to the terms of the policy. The policy provides that coverage

will terminate upon the earliest of several events, including "the last day of the month in which the Employee's employment" is terminated, and that ceasing active work is deemed termination of employment unless "cessation of work is due to a temporary layoff or approved leave of absence."

In support of this argument, AEG relies primarily upon the July 10, 2000, termination record. As noted, however, there was conflicting evidence at trial as to who completed the portion of the termination record which indicated the last day worked and the date notice was given. Moreover, both Kavan and Webb testified that while May 15 was the last day that Webb actually performed labor for Office One, his employment was not terminated until sometime after the surgery was performed. There is thus sufficient evidence to support the trial court's factual finding that Webb was employed by Office One and was on leave of absence status on the date of his surgery. This assignment of error is without merit.

## ADMISSIBILITY OF MEDICAL BILLS

In its fourth assignment of error, AEG assigns that the district court erred in "admitting the medical bills without foundation and without qualifying as an exception to hearsay." At trial, AEG objected to the receipt of all the medical bills and to most of Webb's testimony regarding the amount of medical expenses for which he was obligated and sought recovery from AEG. On appeal, however, AEG does not assign error with respect to the overruling of its objections to Webb's testimony.

The admission of evidence which is primarily duplicative of other evidence admitted into the record is not reversible error. *Anderson v. Bellino*, 265 Neb. 577, 658 N.W.2d 645 (2003). Because the information in the medical bills themselves is primarily duplicative of Webb's testimony, and the rulings of the trial court with respect to Webb's testimony are not assigned as error on appeal, the district court could not have committed reversible error in admitting the bills into evidence. This assignment of error is therefore without merit.

## ATTORNEY FEES

The district court ordered AEG to pay Webb $2,500 in attorney fees pursuant to § 44-359. On appeal, AEG contends that the district court erred in doing so because it is not an insurance

company subject to § 44-359. This argument ignores the plain language of § 44-359, which provides in relevant part:

> In all cases when the beneficiary or other person entitled thereto brings an action upon *any type of insurance policy . . . against any company*, person, or association doing business in this state, the court, upon rendering judgment against such company, person, or association, shall allow the plaintiff a reasonable sum as an attorney's fee in addition to the amount of his or her recovery, to be taxed as part of the costs.

(Emphasis supplied.) Under this statute, a successful plaintiff in an action on an insurance policy against any company doing business in this state, whether or not the company meets the technical definition of an "insurance company," is entitled to recover an attorney fee. Because Webb obtained a judgment against AEG, a company doing business in this state, in an action on an insurance policy, the district court did not err in awarding Webb attorney fees under § 44-359.

## CONCLUSION

For the reasons discussed, we do not reach AEG's contention that the district court erred in denying its motion to compel arbitration because no timely appeal was taken from that final, appealable order. We conclude that all other assignments of error are without merit and therefore affirm the judgment of the district court.

AFFIRMED.

WRIGHT, J., participating on briefs.