In re Interest of Jassenia H., a child
under 18 years of age.
State of Nebraska, appellee, and Joy Shiffermiller,
guardian ad litem, on behalf of Jassenia H.,
appellant, v. Monique M., appellee.

___ N.W.2d ___

Filed June 12, 2015.   No. S-14-1076.

1. **Judgments: Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision.
2. **Juvenile Courts: Jurisdiction: Appeal and Error.** In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
3. **Jurisdiction: Appeal and Error.** When an appellate court is without jurisdiction to act, the appeal must be dismissed.
4. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders.
5. **Final Orders: Appeal and Error.** Under Neb. Rev. Stat. § 25-1902 (Reissue 2008), the three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right in an action and which in effect determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered.
6. **Juvenile Courts: Appeal and Error.** A proceeding before a juvenile court is a special proceeding for appellate purposes.
7. **Final Orders: Appeal and Error.** To be final and appealable, an order in a special proceeding must affect a substantial right.

8. **Final Orders: Words and Phrases.** A substantial right is an essential legal right, not a mere technical right.
9. **Final Orders: Appeal and Error.** A substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which the appeal is taken.

Appeal from the Separate Juvenile Court of Lancaster County: Toni G. Thorson, Judge. Appeal dismissed.

Joy Shiffermiller, of Shiffermiller Law Office, P.C., L.L.O., guardian ad litem, for appellant.

Lisa F. Lozano and Danielle L. Savington for appellee Monique M.

Heavican, C.J., Wright, Connolly, McCormack, Miller-Lerman, and Cassel, JJ.

Cassel, J.

## INTRODUCTION

This appeal attempts to challenge a juvenile court order determining that the federal Indian Child Welfare Act of 1978 (ICWA)[1] (and by implication, the Nebraska Indian Child Welfare Act (NICWA)[2]) applies to the adjudication proceeding of an alleged Indian child. The child's guardian ad litem (GAL) asserts that the "Indian family" had already been dissolved by the mother's intent to relinquish custody. However, we determine that the order was not a final, appealable order. The mere determination that ICWA and NICWA applied, without further action, did not affect a substantial right. We dismiss the appeal for lack of jurisdiction.

## BACKGROUND

The juvenile proceeding under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) regarding Jassenia H. began several weeks

---

[1] 25 U.S.C. §§ 1901 to 1963 (2012).

[2] Neb. Rev. Stat. §§ 43-1501 to 43-1516 (Reissue 2008 & Cum. Supp. 2014).

after her birth and commenced with the filing of a motion for temporary custody. In support of the motion, the State attached an affidavit from a "Children and Family Services Specialist" with the Nebraska Department of Health and Human Services (DHHS). The specialist indicated that Jassenia's mother, Monique M., had an extensive history of involvement with DHHS regarding her other children. According to the specialist, "[S]everal of [Monique's] children have been abused and/or neglected, which resulted in them being removed from her care. She has thereafter failed to correct the conditions of neglect and those children have not been able to be returned to her care."

The juvenile court granted DHHS temporary custody of Jassenia and ordered that she be removed from Monique's care. Several days later, the State filed a petition for adjudication pursuant to § 43-247(3)(a), alleging that Jassenia lacked proper parental care by reason of Monique's fault or habits and/or that Jassenia was in a situation dangerous to life or limb or injurious to her health or morals.

After a hearing, the juvenile court ordered the State to provide notice to the Oglala Sioux Tribe as set forth in ICWA and NICWA. The notice provisions of ICWA and NICWA are substantially the same. Under NICWA,

> [i]n any involuntary proceeding in a state court, when the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe . . . of the pending proceedings and of their right of intervention. . . . No foster care placement or termination of parental rights proceedings shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the secretary.[3]

In addition, the court appointed a GAL for Jassenia and counsel to represent Monique.

---

[3] § 43-1505(1).

At a later hearing, the juvenile court stated that despite the notice given to the Oglala Sioux Tribe, no response or motion to intervene had been received from the tribe. And according to Monique's testimony, Jassenia was eligible for enrollment in the tribe. Monique testified that she was an enrolled member of the tribe, that Jassenia was born on the reservation, and that Monique had completed "application forms" for Jassenia's enrollment.

However, Monique also testified that on the day of Jassenia's birth, she had intended to grant custody of Jassenia to Monique's cousin. To that effect, Monique executed a document purporting to "[h]ereby/and give full legal consent and guardianship an[d] custody of [Jassenia] [t]o my relative . . . ." And Monique believed that pursuant to the document, her cousin had "legal custody" of Jassenia. Monique testified that her cousin was a member of the tribe living on the reservation and that Monique wanted Jassenia to be raised in a "Native American culture" by a family member.

After the hearing, the juvenile court continued the matter in order to determine whether ICWA applied. And on that issue, the GAL filed a motion specifically requesting that ICWA be found inapplicable based upon the U.S. Supreme Court's holding in *Adoptive Couple v. Baby Girl*.[4]

In *Adoptive Couple*, the adoptive parents of a little girl who was 3/256 Cherokee petitioned for certiorari from the South Carolina Supreme Court's interpretation of certain provisions of ICWA. The South Carolina court interpreted provisions of the federal act to require the removal of the girl from her adoptive parents' care to be given to her biological father, a member of the Cherokee Nation, with whom she had never had prior contact and who had attempted to relinquish custody.

The U.S. Supreme Court rejected the South Carolina court's interpretation and observed that the adoption of the little girl did not contravene Congress' intent in enacting ICWA.

---

[4] *Adoptive Couple v. Baby Girl*, ___ U.S. ___, 133 S. Ct. 2552, 186 L. Ed. 2d 729 (2013).

> [T]he primary mischief the ICWA was designed to coun-
> teract was the unwarranted *removal* of Indian children
> from Indian families due to the cultural insensitivity and
> biases of social workers and state courts. . . . And if the
> legislative history of the ICWA is thought to be relevant,
> it further underscores that the Act was primarily intended
> to stem the unwarranted removal of Indian children
> from intact Indian families. . . . In sum, when, as here,
> the adoption of an Indian child is voluntarily and law-
> fully initiated by a non-Indian parent with sole custodial
> rights, the ICWA's primary goal of preventing the unwar-
> ranted removal of Indian children and the dissolution of
> Indian families is not implicated.[5]

Relying upon the Court's holding, the GAL argued that
Monique's intention to relinquish custody of Jassenia ren-
dered ICWA inapplicable. The GAL claimed that like
*Adoptive Couple*, this case would not result in the dissolu-
tion of an Indian family, because Monique did not intend to
raise Jassenia.

The juvenile court conducted a hearing on the applicability
of ICWA, and the court received an affidavit from an "ICWA
Advocate" with the Oglala Sioux Tribe. In the affidavit, the
advocate stated that he had reviewed the tribe's "records of
enrollment" and that Monique was a registered member of the
tribe. He further averred that as the child of an enrolled mem-
ber, Jassenia was eligible for enrollment in the tribe.

The juvenile court entered an order finding that ICWA was
applicable to the proceedings. (Because the applicability of
ICWA and NICWA are substantially the same,[6] we construe
the court's order as speaking to both acts.) The GAL filed

---

[5] *Id.*, 133 S. Ct. at 2561.

[6] See 25 U.S.C. § 1903(4) and § 43-1503(4). See, also, *In re Adoption
of Kenten H.*, 272 Neb. 846, 725 N.W.2d 548 (2007) (observing that
applicability of ICWA and NICWA depends on whether proceedings
involve "Indian child").

a timely notice of appeal, and we moved the appeal to our docket pursuant to statutory authority.[7]

## ASSIGNMENT OF ERROR

The GAL assigns, restated, that the juvenile court erred in determining that ICWA and NICWA were applicable to the proceedings notwithstanding Monique's intent to relinquish custody of Jassenia.

## STANDARD OF REVIEW

[1] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision.[8]

## ANALYSIS

[2,3] As noted above, from the outset, this case presents an issue regarding appellate jurisdiction. In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[9] When an appellate court is without jurisdiction to act, the appeal must be dismissed.[10]

[4,5] For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders.[11] Under Neb. Rev. Stat. § 25-1902 (Reissue 2008), the three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right in an action and which in effect determines the action and prevents

---

[7] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

[8] *In re Guardianship of Sophia M.*, 271 Neb. 133, 710 N.W.2d 312 (2006).

[9] *In re Interest of Meridian H.*, 281 Neb. 465, 798 N.W.2d 96 (2011).

[10] *Carlos H. v. Lindsay M.*, 283 Neb. 1004, 815 N.W.2d 168 (2012).

[11] *In re Interest of Anthony R. et al.*, 264 Neb. 699, 651 N.W.2d 231 (2002).

a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered.[12]

[6,7] We have previously indicated that a proceeding before a juvenile court is a special proceeding for appellate purposes.[13] Thus, we focus our analysis upon the second category of final orders set forth in § 25-1902. And as provided by that section, to be final and appealable, an order in a special proceeding must affect a substantial right.[14]

However, short of identifying a substantial right, the GAL does not identify *any* right which was affected by the juvenile court's order finding ICWA and NICWA applicable to the proceedings. Rather, her assertion of appellate jurisdiction relies upon the Nebraska Court of Appeals' holding in *In re Interest of Brittany C. et al.*[15] In that case, the Court of Appeals concluded that the denial of a biological mother's requests to transfer jurisdiction to a tribal court pursuant to ICWA and NICWA was a final, appealable order.

But in *In re Interest of Brittany C. et al.*, the Court of Appeals reasoned that the mother's requests for transfer were analogous to a motion seeking arbitration in lieu of litigation.[16] If granted, the proceedings would stop and be transferred to another forum which may "differ in other respects consistent with the tribal court's Native American traditions."[17] And as

---

[12] *In re Interest of Meridian H., supra* note 9.

[13] See, e.g., *id.*; *In re Interest of Anthony R. et al., supra* note 11.

[14] See *In re Interest of Anthony R. et al., supra* note 11.

[15] *In re Interest of Brittany C. et al.*, 13 Neb. App. 411, 693 N.W.2d 592 (2005).

[16] See *Webb v. American Employers Group*, 268 Neb. 473, 684 N.W.2d 33 (2004) (determining that denial of motion to compel arbitration affected substantial right, because motion sought to halt pending lawsuit and transfer it to nonjudicial forum).

[17] *In re Interest of Brittany C. et al., supra* note 15, 13 Neb. App. at 421, 693 N.W.2d at 601.

Congress recognized in enacting ICWA, a tribal court may provide a parent and child with significant advantages inherent in the recognition and implementation of Native American customs and traditions.[18]

However, unlike *In re Interest of Brittany C. et al.*, this case does not involve the denial of a request to transfer jurisdiction to a tribal court. Rather, the juvenile court merely determined that ICWA and NICWA were applicable to the proceedings. Thus, we must decide whether this determination alone affected a substantial right.

[8,9] We have defined a "substantial right" in various ways. We have stated that a substantial right is an essential legal right, not a mere technical right.[19] We have also explained that a substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which the appeal is taken.[20]

In this case, as in all juvenile cases, the GAL represents the interests of the juvenile.[21] But discussion of a juvenile's interests is rare in our final order jurisprudence. Most of our prior cases dealing with the finality of juvenile court orders involve the substantial right of a parent.[22] In our review, we have found only one appellate case of this state addressing the substantial right of a juvenile in a juvenile proceeding.[23] And that case merely determined that a juvenile did not have a substantial right to testify outside of the presence of her mother.[24]

---

[18] See *id.*

[19] See *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012).

[20] See *id.*

[21] See Neb. Rev. Stat. § 43-272(2) (Reissue 2008).

[22] See *In re Interest of Karlie D., supra* note 19 (identifying substantial right of parent in juvenile proceedings as parent's fundamental, constitutional right to raise his or her child).

[23] See *In re Interest of Marcella B. & Juan S.*, 18 Neb. App. 153, 775 N.W.2d 470 (2009).

[24] See *id.*

In considering a juvenile's interest, we take note of the purpose of the Nebraska Juvenile Code in ensuring the rights of all juveniles to care and protection and a safe and stable living environment and to development of their capacities for a healthy personality, physical well-being, and useful citizenship to protect the public interest.[25] And we acknowledge that like parents, children also have a constitutional interest in the continuance of the parent-child relationship.[26] However, we cannot settle the issue here. Although ICWA and NICWA have repercussions upon a child's welfare and the parent-child relationship, these consequences are not realized until some adjudicative or dispositive action is taken by the juvenile court.

Generally speaking, the substantive portions of ICWA and NICWA provide heightened protection to the rights of Indian parents, tribes, and children in proceedings involving custody, termination, and adoption.[27] To that effect, among other provisions, the acts authorize tribal jurisdiction,[28] require specific showings for foster care placement or termination of parental rights,[29] and express a preference for the placement of Indian children with extended family members or persons with tribal ties.[30]

However, all of the heightened protections afforded by ICWA and NICWA apply prospectively to future determinations in the proceedings.[31] In the present case, there is no indication that these protections have had any effect upon the adjudication proceedings. From the record, it does not appear

---

[25] See Neb. Rev. Stat. § 43-246(1) (Cum. Supp. 2014).

[26] See *In re Guardianship of D.J.*, 268 Neb. 239, 682 N.W.2d 238 (2004).

[27] See *In re Adoption of Kenten H., supra* note 6.

[28] See 25 U.S.C. § 1911 and § 43-1504.

[29] See 25 U.S.C. § 1912 and § 43-1505.

[30] See 25 U.S.C. § 1915 and § 43-1508.

[31] See *In re Adoption of Kenten H., supra* note 6 (observing that ICWA and NICWA apply prospectively from date Indian child status is established on record).

that the juvenile court has entered a preadjudication detention order. (Although we understood the GAL as stating at oral argument that such an order had been entered, we do not find it in our record.) And it is clear that Jassenia had not yet been adjudicated at the time ICWA and NICWA were found applicable. Further, we see no motion to transfer jurisdiction to a tribal court or any indication that the Oglala Sioux Tribe has sought to intervene.

Until the court takes action to implement or contravene the heightened protections afforded by ICWA and NICWA in some fashion, we cannot conclude that the mere determination of applicability affects a substantial right. The juvenile court declared only that these laws apply—it did not implement them in any way affecting the child's substantial rights. The court's order was interlocutory and until it applied the law in some adjudicative or dispositive action, functioned merely as an advisory opinion.

## CONCLUSION

The GAL appealed from an order merely finding that ICWA and NICWA applied to the adjudication proceeding. But the juvenile court took no action implementing or contravening the heightened protections afforded by the acts. Although we are sensitive to the need to expedite juvenile matters, without some dispositive action, we see no impact upon the juvenile's substantial rights. Consequently, the juvenile court's order does not constitute a final order within the meaning of § 25-1902. In the absence of a final order, we must dismiss the appeal for lack of jurisdiction. Because these proceedings have already been delayed for an inordinate time, we have expedited the disposition of this appeal.

APPEAL DISMISSED.

STEPHAN, J., not participating.