DON NELSON, APPELLEE AND CROSS-APPELLANT, V. NEIL COOL, APPELLANT AND CROSS-APPELLEE.
DON NELSON, APPELLEE AND CROSS-APPELLANT, V. NORRIS COOL, APPELLANT AND CROSS-APPELLEE.
434 N.W.2d 32

Filed January 13, 1989. No. 87-395.

David W. Jorgensen, of Nye, Hervert, Jorgensen & Watson, P.C., for appellants.

Mary Morgan Cote, of Cunningham, Blackburn, Livingston, Francis, Cote, Brock & Cunningham, for appellee.

HASTINGS, C.J., WHITE, and CAPORALE, JJ., and REAGAN, D.J., and COLWELL, D.J., Retired.

REAGAN, D.J.

This case arises out of two replevin actions filed by the appellee, Don Nelson, against the appellants, Neil Cool and his father, Norris Cool. The subject matter of both actions is a 1980 Kenworth motor vehicle. By stipulation, the cases were consolidated for trial and heard by the district judge, sitting without a jury. From a judgment in favor of Nelson in both cases, the Cools have brought this appeal. Nelson has cross-appealed, contending the district judge was in error in failing to award incidental damages in addition to the return of the vehicle.

In the determination of this appeal, the findings and disposition of the district judge have the effect of a jury verdict and are not to be disturbed unless clearly wrong. *Alford v.*

*Neal,* 229 Neb. 67, 425 N.W.2d 325 (1988); *Packett v. Lincolnland Towing,* 227 Neb. 595, 419 N.W.2d 149 (1988); *Ford v. Jordan,* 220 Neb. 492, 370 N.W.2d 714 (1985). Nelson is also entitled to have all factual issues, together with legitimate inferences and conclusions, resolved in his favor. *Middagh v. Stanal Sound Ltd.,* 222 Neb. 54, 382 N.W.2d 303 (1986). With those rules in mind, we now set forth the factual background disclosed by the record.

Nelson purchased the 1980 Kenworth tractor on about December 1, 1984. The vehicle was in a wrecked condition, and he paid the sum of $17,064 to complete the purchase. The vehicle's previous owner assigned the interest in the vehicle in blank (an open title), and Nelson took possession of the tractor and brought it to Grand Island, Nebraska, for repairs. Although Nelson had possession of the vehicle and possession of a properly endorsed title, he never had a title issued in his own name.

Repairs were made on the vehicle by Neil Cool. Parts and labor were provided and paid for by Nelson. Although the evidence is unclear as to whether Neil Cool was paid for all of his labor, it is undisputed that at some point Nelson exhausted his line of credit for further financial investment in the vehicle. At that time, Nelson and Cool reached an agreement that Nelson would transfer the open title to Neil Cool; Neil Cool would obtain an additional loan to complete the repairs, using the vehicle as security; and following completion of the repairs, the truck would be operated to haul grain and livestock, with the proceeds to be split between Nelson and Cool. Cool was to provide insurance coverage on the truck, with loss payable to Nelson, and, in the event of Cool's default on the anticipated loan, Nelson was to have the right to pay off the loan and retain possession of the truck. Although the agreement was originally in writing, it was not introduced at trial.

In furtherance of this agreement, a certificate of title covering the Kenworth was issued to Neil Cool on August 23, 1985. On the same date, a lien was noted on the title in favor of the Five Points Bank in Grand Island, and Cool obtained a loan from the bank in the amount of $6,000. Of the loaned amount, approximately $5,500 was given to Nelson and spent to

complete the repairs to the Kenworth tractor. Following completion of the repairs, there was a brief period where the tractor was used under contract, and two payments were made on the bank loan. When the trucking contract was lost and the bank loan was in default, Norris Cool loaned Neil Cool the sum of $5,168.45 to pay off the bank loan. The bank released its lien on the title, and Neil Cool then transferred title to Norris Cool in satisfaction of the personal loan.

Although there are three assignments of error set forth in the brief of appellants, they can be summarized into a single assignment for purposes of this opinion and decision: the trial court erred in finding plaintiff-appellee was the owner of the truck, entitled to immediate possession, and in ordering delivery.

It is the burden of the plaintiff in a replevin action to prove by a preponderance of the evidence that (1) he was the owner of the property, (2) he was entitled to immediate possession, and (3) the defendant wrongfully detained the property. *Packett v. Lincolnland Towing, supra.*

In both of these actions, Nelson alleged a special ownership interest in the Kenworth by virtue of having furnished the purchase price and money for repairs. Although it is unclear whether he claims a purchase money mortgage in the vehicle, a conditional interest established by the agreement between himself and Neil Cool, or some other security interest, the express provisions of the certificate of title act invalidate these interests as to subsequent purchasers, such as the appellants. Neb. Rev. Stat. § 60-110 (Reissue 1984); *The Cornhusker Bank of Omaha v. McNamara,* 205 Neb. 504, 288 N.W.2d 287 (1980); *First Nat. Bank v. Provident Finance Co.,* 176 Neb. 45, 125 N.W.2d 78 (1963).

It is true we have departed from some express provisions in the certificate of title act in order to prevent fraud, coercion, or a result that would defeat the very purpose of the legislation, such as a title procured by theft, forgery, or misrepresentation. *Alford v. Neal,* 229 Neb. 67, 425 N.W.2d 325 (1988); *Kinkenon v. Hue,* 207 Neb. 698, 301 N.W.2d 77 (1981). But the evidence in these cases clearly established that title and possession of the Kenworth were both voluntarily transferred by Nelson, and

there is no factual or legal reason properly advanced to avoid application of the act.

Nelson argues the judgment is presumed correct, and argues in his brief at 12:

> Whatever legal theory was used by the Trial Court to return the truck to the Appellee, whether the Court determined that Neil obtained the truck and title by fraud, theft or misrepresentation, or that he breached his contract with the Appellee, the result is supported by substantial evidence in the record.

We agree the judgment is supported by such a presumption of correctness. *Flood v. Keller*, 214 Neb. 797, 336 N.W.2d 549 (1983). However, we are obligated to dispose of the case on the basis of the theory presented by the pleadings on which the case was tried. *Union Pacific RR. Co. v. Kaiser Ag. Chem. Co.*, 229 Neb. 160, 425 N.W.2d 872 (1988). A petition should not leave uncertain the theory on which the plaintiff chooses to proceed, *Hutmacher v. City of Mead, ante* p. 78, 430 N.W.2d 276 (1988), but should state in logical and legal form the facts which constitute the cause of action, define the issues to which defendant must respond at trial, and inform the court of the real matter in dispute. *First Nat. Bank of Omaha v. State, ante* p. 259, 430 N.W.2d 893 (1988). Nelson did not allege in his petitions that the truck or title was obtained by fraud, theft, misrepresentation, or breach of contract, and a judgment based on any of those theories would not be supported by the pleadings. We would further point out the record discloses nothing to indicate the district judge decided the case on any basis other than as presented by the pleadings, and Nelson never asked for leave to amend his petitions to conform to any evidence which may have shown other legal theories of recovery.

The evidence is insufficient as a matter of law to establish either a special ownership or a right to immediate possession in the Kenworth by Nelson. The evidence establishes as a matter of law the Kenworth was not in the possession of Neil Cool at the time the action was filed. Replevin will not lie against a defendant who is not in possession of the subject property. *First Nat. Bank v. Rickel, Inc.*, 229 Neb. 478, 427 N.W.2d 777

(1988). For this additional reason, the judgment of replevin against Neil Cool is clearly wrong. It is unnecessary, in light of the disposition of the appeal, to consider the issue raised in Nelson's cross-appeal. The judgment in each case is reversed, and the causes are remanded with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.