PRECISION ENTERPRISES, INC., A NEBRASKA CORPORATION, AND RYAN STEELE, APPELLEES, V. DUFFACK ENTERPRISES, INC., A NEBRASKA CORPORATION, DOING BUSINESS AS BELLEVUE TOYOTA, APPELLANT.

710 N.W.2d 348

Filed February 28, 2006.   No. A-04-756.

Michael T. Levy and Kathy Pate Knickrehm for appellant.

Wesley S. Dodge for appellees.

IRWIN, SIEVERS, and MOORE, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Precision Enterprises, Inc., and Ryan Steele, owner of Precision Enterprises (collectively Precision), sued Duffack Enterprises, Inc., doing business as Bellevue Toyota (Bellevue Toyota), in an amended petition for specific performance, alleging that the parties entered into a valid contract and asking the court to direct Bellevue Toyota to comply with the terms of the contract. In Bellevue Toyota's answer, it pled two affirmative defenses and filed counterclaims for replevin and damages. Bellevue Toyota appeals from an order of the district court for Sarpy County, Nebraska, awarding judgment to Precision and dismissing Bellevue Toyota's counterclaims. Bellevue Toyota contends that the district court erred in failing to find that Precision had fraudulently misrepresented or concealed the fact that a 2002 Ford Explorer Sport Trac which Precision traded as partial payment for receipt of a new Toyota Camry had been previously damaged. Because Bellevue Toyota failed to prove by a preponderance of the evidence its legal counterclaims

based on fraudulent misrepresentation and fraudulent concealment and because Bellevue Toyota failed to prove by a preponderance of the evidence or by clear and convincing evidence its affirmative defenses of fraudulent misrepresentation and fraudulent concealment, we hold that the district court was correct in concluding that Precision should prevail in its action for specific performance.

## II. BACKGROUND

On March 9, 2002, Steele reported to Precision's automobile insurance company that the 2002 Ford Explorer had been in an accident wherein the driver "lost control and [the vehicle] went into a ditch." The vehicle was inspected for damage, photographs were taken, and a damage estimate was created. Testimony at trial revealed that the vehicle sustained damage requiring, inter alia, replacement of two airbags and replacement of the frame of the vehicle. The total value of the loss was estimated to be $12,406.49. Photographs admitted into evidence show the condition of the vehicle after the accident. These photographs reveal obvious damage to the front end of the vehicle, including damage to the windshield, hood, front side panels, bumper, headlights, and grill.

Precision received payment of its insurance claim, less $500 for the deductible, amounting to $11,906.49. In April 2002, Steele authorized repairs in the amount of $4,200 to be performed on the vehicle. Evidence adduced at trial revealed that when an inspection of the vehicle was performed in January 2003 at Bellevue Toyota's request, "a poor quality repair" was discovered. The co-owner of an automotive collision repair company testified that he performed that inspection and discovered that there were "[m]issing bolts, welds that were left off, poor fits on the sheet metal, holes that were reamed out on the fenders[, and] twist ties to hold parts of the vehicle together."

On December 26, 2002, Steele visited four competing dealerships in the course of shopping for a new vehicle. While at Bellevue Toyota, he negotiated for Precision Enterprises' purchase of a Toyota Camry, using the 2002 Ford Explorer as a trade-in. The trade-in vehicle was appraised by Jim Duffack, the owner of Bellevue Toyota, who noticed that the hood on the

vehicle was "out of alignment." Duffack testified at trial that after noticing the condition of the hood, he asked Steele whether the vehicle had ever been damaged. Steele replied, "[N]o." At trial, Bellevue Toyota presented no photographic evidence depicting the condition of the vehicle at the time of the trade-in.

Duffack explained that although he was uncomfortable with the condition of the trade-in vehicle, he was "trying to make a car deal." He testified that he, a sales person, and the general sales manager had asked Steele whether the vehicle had been damaged. Duffack explained that while the hood did not align properly, it "doesn't mean that the [vehicle] had been wrecked like it had been. It could have been jammed or [had] something fall on it."

After some negotiations, Steele was not satisfied and announced that he was leaving. However, an employee of Bellevue Toyota indicated he was unable to find the keys to the 2002 Ford Explorer. Subsequently, another employee of Bellevue Toyota asked, "[W]hat's it going to . . . take to get you to buy a vehicle today[?]" At that time, negotiations continued and a purchase price was agreed upon at an amount $500 less than a previously proffered price. On December 26, 2002, Steele, on behalf of Precision Enterprises, signed a "Nebraska Purchase Contract" with Bellevue Toyota, which contract indicated a trade allowance of $20,169 for the 2002 Ford Explorer. Steele departed the dealership in the Toyota Camry, leaving the trade-in vehicle at Bellevue Toyota. Steele returned to Bellevue Toyota on December 30, 2002, for the purpose of completing the sale and signing documents.

Another document that Steele signed on December 26, 2002, was a questionnaire containing information about the trade-in vehicle. The questionnaire asked, "Has the vehicle sustained any previous body work or damage?" and "Has the vehicle sustained damage over $5,000?" After each question, a corresponding box for "No" was checked. On the "Customer Signature" line, the initials "R.S." are written. At trial, Steele was questioned whether the responses were truthful statements. He replied that the response to whether the trade-in vehicle had sustained any previous body damage was not correct but that he did not recall filling out the questionnaire.

In addition to the purchase agreement Steele signed on December 26, 2002, he signed another "Nebraska Purchase Contract" on December 30. After the December 30 contract was finalized, Bellevue Toyota requested that the above-mentioned automotive collision repair company perform the inspection on the trade-in vehicle. As a result of this inspection, Steele received a telephone call on January 3, 2003, from Bellevue Toyota demanding that the Toyota Camry be returned to the dealership and that the 2002 Ford Explorer be returned to Precision. Steele refused the demand, replying that the contract was in force. In a letter to Steele dated January 11, 2003, counsel for Bellevue Toyota wrote:

> Because of . . . fraud and misrepresentation, Bellevue Toyota does hereby notify you that the purchase agreement . . . is hereby declared void and of no validity as of the date of its execution on December 26, 2002. Demand is hereby made of you to immediately return to Bellevue Toyota the 2003 Toyota Camry, possession of which you fraudulently obtained from Bellevue Toyota, and to again take possession of the 2002 Ford Explorer.

On February 28, 2003, Steele filed a "Petition for Specific Performance" in the district court for Sarpy County, and on April 3, Precision filed an amended complaint alleging that Precision and Bellevue Toyota had "entered into a sales contract in regard to [the 2003 Toyota Camry]" and that Precision had "complied with all conditions of the contract and wishe[d] to register [the 2003 Toyota Camry] and continue with the financing agreement that was associated with such contract." Precision asked the court "for an order compelling [Bellevue Toyota] to deliver the title to [Precision] and [to comply] with the remainder of the previously entered into contract."

Bellevue Toyota filed an answer admitting the existence of the December 26, 2002, contract. The answer also contained two counterclaims—one for replevin and one for damages. In addition, the answer alleged that Bellevue Toyota "was defrauded by [Precision]" and also alleged affirmative defenses of fraudulent misrepresentation and fraudulent concealment.

A hearing on the amended complaint and counterclaims was held on February 17, 2004. The court found that Bellevue

Toyota's reliance on responses made on the questionnaire was misplaced. In addition, the court concluded that "it was not reasonable on the part of an owner of a car dealership to observe a truck with obvious damage, yet rely on the seller's statement that it had never sustained damage. The element of reasonable reliance to constitute a fraudulent misrepresentation claim is lacking." The court ultimately found that Precision had "sustained [its] burden of showing the parties entered into a valid contract for the sale of the Toyota Camry and that [Bellevue Toyota was] responsible under that contract to deliver the necessary documents, including the title to the vehicle, to [Precision]." As to the affirmative defenses and counterclaims, the court found that Bellevue Toyota failed to sustain its burden of showing that Precision had "committed fraud so as to invalidate the contract and require either replevin and/or payment of damages." This timely appeal followed.

## III. ASSIGNMENT OF ERROR

Bellevue Toyota's sole assignment of error is that the trial court erred in failing to find that Precision had fraudulently misrepresented or concealed the fact that the vehicle it traded in had been previously damaged.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

To determine the appropriate standard of review, it is necessary to determine whether a claim or a counterclaim is an action at law or an action sounding in equity. See *Nebraska Nutrients v. Shepherd*, 261 Neb. 723, 626 N.W.2d 472 (2001). See, also, *Lone Cedar Ranches v. Jandebeur*, 246 Neb. 769, 523 N.W.2d 364 (1994). Whether the nature of a claim or counterclaim is at law or in equity is determined from its main object, as disclosed by the averments of the pleadings and the relief sought. See *Genetti v. Caterpillar, Inc.*, 261 Neb. 98, 621 N.W.2d 529 (2001).

It is not uncommon that an appeal may involve several claims and counterclaims, one or more sounding in equity and one or more sounding in law. See, e.g., *Schuelke v. Wilson*, 255 Neb. 726, 587 N.W.2d 369 (1998) (determining that plaintiff's

action sounded in equity and defendant's counterclaim was action at law); *Fisbeck v. Scherbarth, Inc.*, 229 Neb. 453, 428 N.W.2d 141 (1988). When appeals involve claims and counterclaims, one or more sounding in equity and one or more sounding in law, the question of what standard of review the court must apply becomes a bit more involved. The Nebraska Supreme Court discussed this situation in *Fisbeck v. Scherbarth, Inc., supra*, finding that in a case involving a plaintiff's legal claim and a defendant's equitable counterclaim, both can be adjudicated by the same court in the same action, but the plaintiff's claim must be adjudicated at law and the defendant's counterclaim in equity.

An appellate court reviews a claim or counterclaim that sounds in equity de novo on the record, subject to the rule that where credible evidence is in conflict on material issues of fact, the court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. See *Smith v. City of Papillion*, 270 Neb. 607, 705 N.W.2d 584 (2005). See, also, *Hoff v. Ajlouny, ante* p. 23, 703 N.W.2d 645 (2005). On review of a legal claim or counterclaim, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly erroneous. See, *Fitl v. Strek*, 269 Neb. 51, 690 N.W.2d 605 (2005); *Webb v. American Employers Group*, 268 Neb. 473, 684 N.W.2d 33 (2004).

With the above information, we turn to the case before us and determine the standard of review for the following claims and counterclaims: (1) Precision's claim for specific performance, (2) Bellevue Toyota's counterclaim for replevin, and (3) Bellevue Toyota's counterclaim for damages.

First, Precision's action for specific performance is equitable in nature. We review that portion of the appeal accordingly, trying factual questions de novo on the record and, as to questions of both fact and law, reaching a conclusion independent from the conclusion reached by the trial court. See *Vande Guchte v. Kort*, 13 Neb. App. 875, 703 N.W.2d 611 (2005).

Second, Bellevue Toyota's counterclaim for replevin is legal in nature. In an appeal from a judgment in replevin where a jury has been waived, the findings and disposition of the district

judge have the effect of a jury verdict and are not to be disturbed unless clearly wrong. *Nelson v. Cool*, 230 Neb. 859, 434 N.W.2d 32 (1989).

Third, the Nebraska Supreme Court has addressed the issue of damages in an action for fraud similar to Bellevue Toyota's counterclaim for damages. See *Eicher v. Mid America Fin. Invest. Corp.*, 270 Neb. 370, 702 N.W.2d 792 (2005). In actions for damages alleging fraudulent representations, the Nebraska Supreme Court has used a legal standard of review to determine whether damages were proven, asking whether a trial court's ultimate determination of damages was clearly wrong. See *id.* Accord, *Stein v. Jung*, 492 S.W.2d 139 (Mo. App. 1973) (determining that in suit for damages based on fraud and misrepresentation, appellate court does not set aside judgment unless it is clearly erroneous); *Borland-McBrearty v. Bianco*, 22 Mich. App. 42, 176 N.W.2d 712 (1970) (recognizing that in action for damages resulting from misrepresentation, review of record is for clear error).

### 2. Legal Counterclaims Based on Fraudulent Misrepresentation and Fraudulent Concealment

Bellevue Toyota asserts that the trial court erred in failing to find that Bellevue Toyota had met its burden of proving fraudulent misrepresentation or fraudulent concealment. Bellevue Toyota argues that the element of reasonable reliance was met, because Bellevue Toyota was not required to conduct any investigation in order to ascertain the falsity of Steele's representation that the 2002 Ford Explorer had not been damaged. Bellevue Toyota argues that it was therefore entitled to rescind the purchase agreement and to the relief requested in the counterclaims. We disagree and find that Bellevue Toyota's reliance on Steele's assertions that the 2002 Ford Explorer had not been damaged was not reasonable.

The determination of whether a claim or counterclaim involves a matter sounding in equity or in law affects the appropriate burden of proof that must be met to prove such claim or counterclaim. If the claim or counterclaim is an action at law, the burden of proof is by the preponderance of the evidence. See *Huffman v. Poore*, 6 Neb. App. 43, 569 N.W.2d 549 (1997). If the

claim or counterclaim is an equitable action, the burden of proof is by clear and convincing evidence. See *id.* However, it has been held that in suits at law, fraud must be proven by a preponderance of the evidence. See *Tobin v. Flynn & Larsen Implement Co.*, 220 Neb. 259, 369 N.W.2d 96 (1985). Bellevue Toyota's counterclaims for replevin and damages, based on fraudulent misrepresentation and fraudulent concealment, are legal counterclaims. See, *Nelson v. Cool, supra*; *Eicher v. Mid America Fin. Invest. Corp., supra.* Bellevue Toyota's allegations of fraud, therefore, must be proven by the preponderance of the evidence.

The elements that must be alleged and proven to establish fraudulent misrepresentation are (1) that a representation was made; (2) that the representation was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that it was made with the intention that it be relied upon; (5) that the alleging party reasonably did so rely; and (6) that the alleging party suffered damage as a result. See *Cao v. Nguyen*, 258 Neb. 1027, 607 N.W.2d 528 (2000).

The elements that must be alleged and proven to establish fraudulent concealment are (1) that the opposing party had a duty to disclose a material fact; (2) that the opposing party, with knowledge of the material fact, concealed the fact; (3) that the material fact was not within the alleging party's reasonably diligent attention, observation, and judgment; (4) that the opposing party concealed the fact with the intention that the alleging party act in response to the concealment or suppression; (5) that the alleging party, reasonably relying on the fact or facts as he or she believed them to be as the result of the concealment, acted or withheld action; and (6) that the alleging party was damaged by the opposing party's action or inaction in response to the concealment. See *Ord v. AmFirst Invest. Servs., ante* p. 97, 704 N.W.2d 796 (2005). In fraudulent concealment cases, existence of a duty to disclose is a question of law, but the breach of that duty is a question of fact. See *Streeks v. Diamond Hill Farms*, 258 Neb. 581, 605 N.W.2d 110 (2000).

Whether a party's reliance upon a misrepresentation was reasonable is a question of fact. *Cao v. Nguyen, supra.* A party is justified in relying upon a representation made to the party as a

positive statement of fact when an investigation would be required to ascertain its falsity. *Id.* However, Nebraska law imposes a duty of ordinary prudence upon a party claiming fraudulent misrepresentation. *Schuelke v. Wilson*, 250 Neb. 334, 549 N.W.2d 176 (1996). In regard to this duty, the Nebraska Supreme Court has stated: " '[W]hile no action will lie where ordinary prudence would have prevented the deception, that rule is generally applied where the means of discovering the truth was in the hands of the party defrauded.' " *Id.* at 343, 549 N.W.2d at 182. In *Schuelke v. Wilson, supra,* the court found that the buyer of a franchise business was not justified in relying upon the representations set forth by the seller that the business' expenses and weekly sales would be a certain amount, because the buyer had all the documents necessary to have the expenses reviewed to ascertain their accuracy but took no action.

A party to a business transaction has a duty to disclose facts basic to the transaction when he or she knows another party is about to enter into the transaction under a mistake as to those facts and that the other party would reasonably expect a disclosure of those facts because of the relationship between the parties, the customs of the trade, or other objective circumstances. *Streeks v. Diamond Hill Farms, supra.* Where a defendant has a legal or equitable obligation to reveal material information, the defendant's failure to do so is equivalent to a misrepresentation and may therefore support a claim of actionable fraud where the remaining elements of fraud are proven. *Haisch v. Allstate Ins. Co.,* 197 Ariz. 606, 5 P.3d 940 (Ariz. App. 2000).

Precision represented that the 2002 Ford Explorer, the trade-in vehicle, had not sustained previous damage, and such representation was false as shown by the evidence that the vehicle was involved in an accident in 2002. An officer of the Bellevue Police Department investigated the sales transaction between Precision and Bellevue Toyota. On January 17, 2003, the officer met with Steele regarding that sales transaction. The officer testified at trial that Steele stated he "knew it was wrecked, referring to the Ford Explorer, but [he] wasn't going to mention it." As such, we know that the representation was known to be false and was made as a positive assertion. In addition, Duffack testified that the actual value of the trade-in vehicle was approximately $10,500.

Therefore, we know that Bellevue Toyota was damaged as a result of reliance on the representation. All elements of fraudulent misrepresentation are undisputed except whether Bellevue Toyota reasonably relied upon the representation.

Similar to the situation in *Schuelke v. Wilson, supra,* in the instant case, the means of discovering the condition of the trade-in vehicle were in Bellevue Toyota's possession. Duffack appraised the 2002 Ford Explorer on December 26, 2002, and was aware of a problem with the alignment of the hood. Duffack testified:

> I took the keys and the appraisal sheet that — up to . . . the general sales manager, and I said, I'm uncomfortable, the [trade-in vehicle] has so much mud on it from being driven on mud roads that I can't do a proper appraisal on this [vehicle], and I see that the hood doesn't fit right, I can't see much else, I couldn't determine much else, you ask the man if the [vehicle has] ever been wrecked when you go in and do these finalized figures.
>
> . . . I personally asked [Steele] as the owner of [Precision Enterprises] if the [vehicle] had ever been damaged before [and h]e said no. And [the sales manager] asked him the very same question.

Bellevue Toyota retained possession of the trade-in vehicle for several more days and took no action to ascertain the accuracy of Precision's representations. As previously stated, whether Bellevue Toyota's reliance on Precision's statements was reasonable is a question of fact. Bellevue Toyota was in possession of the means of discovering the actual condition of the trade-in vehicle and had a duty of ordinary prudence. See, *Cao v. Nguyen,* 258 Neb. 1027, 607 N.W.2d 528 (2000); *Schuelke v. Wilson,* 250 Neb. 334, 549 N.W.2d 176 (1996). In addition, the record contains photographic evidence of the condition of the trade-in vehicle, where the damage is obviously visible, and no contradictory evidence was produced at trial indicating that the appearance of the vehicle was different while it was in Bellevue Toyota's possession.

Duffack testified at trial that he was the current owner of Bellevue Toyota and had previously owned Bluffs Toyota for 30 years. He testified that he had "been in the automobile business [for f]orty-three years." In addition, he speculated the average

number of cars he sells in a year is 1,200. Duffack appraised Precision's trade-in vehicle on December 26, 2002, and discovered that the hood was out of alignment and that the vehicle had "so much mud on it . . . that [one could not] do a proper appraisal." Given Duffack's history in the automobile business and his duty to exercise ordinary prudence, the trial court did not err in concluding that it was unreasonable for Bellevue Toyota to rely on Precision's representations. It was not error for the trial court to conclude that Bellevue Toyota, having an automobile dealership owner with a 43-year history in the business who sells an average of 1,200 vehicles a year, would not be reasonable in relying on a buyer's representation that a trade-in vehicle had not sustained prior damage, when such vehicle is covered in mud and the hood is out of alignment.

Given these facts, we cannot find that Bellevue Toyota reasonably relied upon the representation that the trade-in vehicle had sustained no prior damage. Therefore, the allegation of fraudulent misrepresentation was not proven by a preponderance of the evidence, as required for an action at law, and the district court correctly found that Bellevue Toyota had failed to meet its burden of proof concerning such counterclaim.

As to the allegation of fraudulent concealment, it is unnecessary to determine whether Precision had a duty to disclose a material fact and concealed the fact, because the remaining elements of fraudulent concealment were not proven. See *In re Interest of Anthony P.*, 13 Neb. App. 659, 698 N.W.2d 457 (2005) (recognizing that appellate court is not obligated to engage in analysis which is not needed to adjudicate case and controversy before it). Duffack personally appraised Precision's trade-in vehicle and testified at trial that he knew there was a problem with the hood. The fact that the vehicle had sustained damage was within Bellevue Toyota's reasonably diligent attention, observation, and judgment. Again, we cannot find that Bellevue Toyota reasonably relied upon the facts as it believed them to be as a result of the concealment and acted on that reliance. Therefore, the allegation of fraudulent concealment was not proven by a preponderance of the evidence, as required for an action at law, and the district court did not err in finding that Bellevue Toyota failed to meet its burden of proof concerning

the counterclaims. This part of Bellevue Toyota's assignment of error is without merit.

### 3. AFFIRMATIVE DEFENSES OF FRAUDULENT MISREPRESENTATION AND FRAUDULENT CONCEALMENT

Bellevue Toyota asserts that the trial court erred in failing to find Bellevue Toyota had met its burden of proving its affirmative defenses of fraudulent misrepresentation and fraudulent concealment. Bellevue Toyota asserts that all elements of its affirmative defenses were proven and that accordingly, Bellevue Toyota is entitled to relief. The trial court found that "[Bellevue Toyota] has not sustained its burden of showing that [Precision] committed fraud so as to invalidate the contract and require either replevin and/or payment of damages." We find that Bellevue Toyota did not meet its burden of proving its affirmative defenses of fraudulent misrepresentation and fraudulent concealment, and we hold that the trial court did not err in finding the same.

We are mindful that the determination of whether affirmative defenses sound in equity or in law is normally important. One reason, as previously illustrated, is that the determination of whether an appeal involves a claim sounding in equity or in law will determine the degree of deference appellate courts will give to the finder of fact. Thus, the determination of whether affirmative defenses sound in equity or in law affects the appropriate burden of proof that must be met to prove the affirmative defenses.

*Stoural v. Blue Cross and Blue Shield*, 1 Neb. App. 669, 510 N.W.2d 357 (1993), is the most recent decision that contemplates the problem regarding the differing natures of claims and defenses and the appropriate burdens of proof. *Stoural* is an appeal wherein there existed claims and defenses sounding in law and in equity, respectively. The "majority" in *Stoural* affirmed the trial court's opinion, and the two-judge concurrence reached the same result but had a different rationale for coming to its conclusion.

In *Stoural*, citing *White v. Medico Life Ins. Co.*, 212 Neb. 901, 327 N.W.2d 606 (1982), this court held that the trial court properly treated the defendant's rescission argument, based on allegations of fraudulent misrepresentation, as an equitable defense raised in the course of a legal action. The *Stoural* court concluded

that the defendant had to prove its rescission argument by a preponderance of the evidence, rather than by clear and convincing evidence which would be required in an equity action. We glean from this that the *Stoural* court concluded that if an equitable defense is raised in an action at law, such defense need only be proven by the lower burden of proof reserved for actions at law. In other words, the *Stoural* court effectively held that an action at law converted an equitable defense into one bearing the burden of proof of an action at law, which proof is a preponderance of the evidence.

In *Stoural*, the two-judge concurrence stated that "an action at law does not convert an equitable defense into one bearing the burden of an action at law." 1 Neb. App. at 675, 510 N.W.2d at 360. However, although for a different reason, the concurrence, like the "majority" in *Stoural*, affirmed the trial court's conclusion that the correct burden of proof for the defendant's affirmative defense was a preponderance of the evidence. The concurrence held that the defense as pled was one at law, not one in equity. Therefore, the concurrence held that the burden of proof was one at law, i.e., the preponderance of the evidence.

Nebraska law does not conclusively answer the question whether an equitable defense is to be reviewed as falling under the penumbra of the action to which the defendant has answered and, as such, whether the degree of burden the defendant carries in proving such equitable defense is by a preponderance of the evidence or is by clear and convincing evidence. Therefore, we lack direction as to which burden of proof should be applied to Bellevue Toyota's affirmative defenses of fraudulent misrepresentation and fraudulent concealment. Nonetheless, we conclude that the above question need not be resolved in the present case because, as we stated above, Bellevue Toyota failed to prove fraudulent misrepresentation and fraudulent concealment even under the lower, legal burden of proof—a preponderance of the evidence.

We have already affirmed the district court's finding that Bellevue Toyota failed to prove by a preponderance of the evidence its legal counterclaims based on fraudulent misrepresentation and fraudulent concealment. We read the trial court's order to find that Bellevue Toyota has similarly failed to prove by a

preponderance of the evidence its affirmative defenses of fraudulent misrepresentation and fraudulent concealment. It necessarily follows, then, that Bellevue Toyota failed to prove by the higher degree of clear and convincing evidence its affirmative defenses of fraudulent misrepresentation and fraudulent concealment. Regardless of whether the affirmative defenses are considered legal or equitable, and regardless of the appropriate burden of proof, Bellevue Toyota failed to prove fraudulent misrepresentation and fraudulent concealment. We affirm the decision of the trial court that Bellevue Toyota "has not sustained its burden of showing that [Precision] committed fraud so as to invalidate the contract." Bellevue Toyota's assignment of error is without merit.

## V. CONCLUSION

We determine that Bellevue Toyota's legal counterclaims based on fraudulent misrepresentation and fraudulent concealment were not proven by a preponderance of the evidence and that Bellevue Toyota's affirmative defenses were not proven by a preponderance of the evidence or by clear and convincing evidence. Therefore, we affirm the decision of the trial court on Precision's petition for specific performance and find that the trial court properly dismissed Bellevue Toyota's counterclaims.

AFFIRMED.